RANDOFF PRESTON NEAL *v.* STATE OF MARYLAND

[No. 1140, September Term, 1979.]

*Decided May 9, 1980.*

The cause was argued before THOMPSON, LOWE and MacDANIEL, JJ.

*Garland E. Lowe,* with whom were *Hal I. Lackey* and *Coggins, Harman, Lackey & Lowe, P.A.* on the brief, for appellant.

*William H. Kenety, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William Hymes, State's Attorney for Howard County,* and *Bernard A. Raum, Senior Assistant State's Attorney for Howard County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

In *Dill v. State,* 24 Md. App. 695 (1975), we held that the common law crime of "indecent exposure" in Maryland had been supplanted by the 1967 express inclusion of that act in Md. Code, Art. 27, § 122 as a disturbance of the public peace. We reasoned that the Legislature could hardly have intended to permit the punishment of the common law crime, limited only by constitutional restriction upon judicial discretion, to remain when its maximum penalty for the statutory crime requiring the same proof as the common law crime, was merely $50 in fine. *Id.* at 705.

Three years later (1977) the Legislature, which is presumed to know of, and act upon, our construction of its statutes, *Gibson v. State,* 204 Md. 423, 432 (1954), amended the disturbing the peace statute to exclude the indecent exposure language. By use of the same bill — ch. 384, Laws of Md. 1977 — the Legislature provided that:

"Every person convicted of the common-law crime of indecent exposure is guilty of a misdemeanor and

shall be punished by imprisonment for not more
than three years or a fine of not more than $1,000,
or both,"

and codified it as Md. Code, Art. 27, § 335A.

Appellant was convicted by a jury in the Circuit Court for
Howard County of indecently exposing himself on April 5,
1978, and was sentenced under § 335A to three years
imprisonment. His complaint to us is that no crime of
indecent exposure existed in Maryland on that date, but he
is wrong.[1]

He reasons that the statutory repeal of the common law
was itself repealed, thus leaving a void in that context;
however, he misconstrues the principle applied in *Lutz v.
State,* 167 Md. 12 (1934): When a statute abrogating a
principle of the common law is repealed, the common law
principle is revived. 73 Am. Jur. *Statutes* § 384 (1974); 15A
C.J.S. *Common Law* § 126 (1967). This principle is clearly
applicable here. The Legislature not only repealed the
language of the statute which we declared had abrogated the
common law crime, in the same act it provided the penalty
for conviction of "the common law crime". Even without the
revival principle to guide us, the express intent of the
Legislature is unmistakable.[2] In addition to expressly
providing the conviction of the "common law crime of
indecent exposure" as a prerequisite to punishment, the
Legislature could hardly have been expected to specify its
intent to revitalize that which it had neither begat nor
knowingly laid to rest. *Cf. Lutz v. State,* 167 Md. at 15. By
alluding to the common law crime, however, its
understanding and its intent were manifest.

---

1. He is also wrong when he argues that the charging document was
defective because he was charged with violating § 335A by indecently
exposing himself rather than violating the common law. The statute
referred to, however, apprised him that he could not be punished unless he
was convicted of the common law offense. The charging document complied
with Md. Rule 711.

2. The common law crime's existence is not affected by the statutory
penalty limitation. Darby v. State, 3 Md. App. 407, 412-413 (1968), *cert.
denied,* 251 Md. 748 (1968), *cert. denied,* 393 U.S. 1105 (1969).

Appellant alternatively argues that because ch. 384 contains a preamble purporting to state the legislative intent of the act as being

" . . . to define the distinction between the disorderly conduct form of indecent exposure and that type of indecent exposure which is viewed as not merely a nuisance to society as a matter of course but which is also offensive, alarming or harmful to an individual member of that society.

The legislation prohibits overt conduct; actual exposure under circumstances in which would be offensive or alarming; yet, the law does not prohibit 'exposure' in places which are designed for that type of activity,"

that which was enacted as § 335A is unconstitutionally vague. But the *law* is clear; the preamble is not an operative portion of that law, *National Can Corp. v. Tax Comm.,* 220 Md. 418, 439 (1959), *appeal dismissed,* 361 U.S. 534 (1960), notwithstanding that it may be resorted to as a statutory construction aid when a statute needs construing. *Dillon v. State,* 277 Md. 571, 583 (1976).

Chapter 384's preamble, if read out of historical context, confuses rather than aids. The legislative history, however, clearly indicates how a seed planted in the Legislature as an original bill germinates by exposure and once grafted with amendments matures to a clearly defined purpose often bearing fruit decidedly different in appearance than that from which the original seed had been taken.

Chapter 384 began as House Bill 92, the purpose of which was described in its title as

"prohibiting certain acts commonly known as indecent exposure; and providing for a penalty upon conviction."

The substance of the bill was bifurcated first describing the crime as a more prurient one than that envisioned by the disorderly conduct law,

"(A) A  PERSON  IS  GUILTY  OF  A

MISDEMEANOR IF, WITH INTENT TO AROUSE OR GRATIFY THE SEXUAL DESIRE OF ANY PERSON, INCLUDING THE ACTOR, HE EXPOSES HIS GENITALIA OR PERFORMS ANY OTHER SIMILAR ACT UNDER CIRCUM- STANCES IN WHICH, IN FACT, HIS CONDUCT IS LIKELY TO BE OBSERVED BY A PERSON WHO WOULD BE OFFENDED OR ALARMED,"

and a punishment more fitting:

"(B) THE COURT MAY IMPOSE UPON A PERSON CONVICTED UNDER THIS SECTION IMPRISONMENT FOR NOT MORE THAN FIVE YEARS, A FINE NOT TO EXCEED $5,000, OR BOTH."

The preamble obviously indicated that the original bill sought to distinguish sexual deviance from disgusting slobbery by proof of intent. A greater deterrent was provided the former by more substantial sanctions.

The Judiciary Committee, however, chose to address the problem more pragmatically by reviving the common law crime and thus making proof of the crime less difficult without the added element of intent. It also compromised the penalty limitation. The bill was so amended by repealing and reenacting the disturbing the peace law by striking from it the reference to indecent exposure. It then struck out the substance and title of the original bill and substituted the present § 335A (set forth above) which the title described as

"specifying a penalty for persons convicted of the common law crime of indecent exposure."

The preamble, though no longer applicable, was, as we have indicated, not an operative portion of the law and, although it no longer explained the *effect* of the bill as amended, it still reflected the *purpose* for which it had been introduced. While somewhat confusing when now read out of that context, the Legislature, nonetheless, must have felt that it served to tell a sentencing judge that despite the nature of the change in the substance of the original bill, an exposure

with prurient intent is an aggravated offense as opposed to the non scienter nuisance variety, and implies that the judge sentence accordingly.

The motion to dismiss was properly denied and it follows that the trial judge's instructions were not in error as appellant contends, since as he indicated in his brief, the grounds for appellant's objections to them were the same as those he argued for dismissal.

His final complaint[3] is also somewhat related. He contends that the trial judge erred in denying his request to read and argue to the jury the Preamble to ch. 384. Presumably relying upon the almost unique Md. Const. art. XV, § 5, that:

> "[i]n the trial of all criminal cases, the Jury shall be the Judges of Law,"

appellant contends

> "that when the trial court refused to permit counsel to read and argue the Preamble [of Md. Code, Art. 27, § 335A] to the jury, it denied appellant his constitutional rights of having the jury hear and decide the law as well as the facts of the case (Article 23 Declaration of Rights) [sic] and whether or not the law should be applied to the facts of the case. Further, the appellant was deprived of the opportunity to put forth to the jury the legal theories contained in Argument I of this brief: that the crime did not exist, that the charging document did not state an offense and that the law was vague and therefore void."

We have little difficulty with appellant's complaint regarding his right to argue either the unconstitutionality

---

3. In Van Meter v. State, 30 Md. App. 406, 407-408 (1976), *cert. denied,* 278 Md. 737 (1976), we declined to consider questions raised but neither argued by reason nor supported by authority. We have no such sanction to apply to the State in a similar situation here but to express our regret that counsel's one paragraph opinion without citation or reasoning was of no help to us at all on a difficult issue.

or the nonexistence of the crime. The Court of Appeals, as well as this Court, have long since laid that issue to rest.

" ' ... Maryland's constitutional provision making the jury in criminal cases 'the Judges of Law' does not mean precisely what it seems to say.' The conception is not without limitation including exceptions added by statute and others carved out by judicial construction. *Giles v. State,* 229 Md. 370, 382-386. As early as 1858 it was held that *juries had no right to pass upon the constitutionality of a statute and that it was proper for the trial court to prohibit counsel from arguing that question before the jury. Franklin v. State,* 12 Md. 236. In *Slymer v. State,* 62 Md. 237, 241 the Court of Appeals stated that not only was it a court function to

'pronounce on the sufficiency or insufficiency of the evidence to establish the bringing of the law into operation, *it is evident, that whether the law has operative existence or not is a preliminary question for the Court, and the evidence offered is really evidence to the Court on which it pronounces and not the jury.* If it were otherwise ... we might have the anomalous state of things of one jury finding the law operative and the traverser guilty; and another jury finding the law had not been adopted, and for that reason acquitting the accused. Reason and necessity alike require stability in the law.'

It is but a short step to reason that that which is not within the aegis of the jury is not subject to argument before them." *Samson v. State,* 27 Md. App. 326, 336 (1975) (emphasis added).

Slightly more troubling is his simple phrase contending that he was deprived of the right to have the jury "decide the law" and "whether or not the law should be applied to the facts of the case". After reviewing the entire record we

assume from his comments at the end of the State's case that he wished to argue to the jury that which he had asserted to the court, *i.e.,*

> "the statute, as enacted by the legislature, requires something more than the common law crime of indecent exposure, in that, it specifically introduces elements like alarming, harmful — I forget the other words; however, the State in its direct case has not entered it as a[n] offense to comply with any of those elements, that it was in any way harmful, offensive, alarming, there was no direct testimony to that and, therefore, we're unable to distinguish is this the kind of indecent exposure which is merely a nuisance or is, in fact, the greater degree, which is alarming and harmful."

But we have pointed out above that the language of the statute is clear and unambiguous. A jury in a criminal case has no greater prerogative as judge of the law than would the court have had sitting without a jury and it is axiomatic that where a statute is clear and unambiguous no other indicia of intent or meaning need be considered.

> " '[W]here statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view toward making the statute express an intention which is different from its plain meaning.' " *Wheeler v. State,* 281 Md. 593, 596 (1977), quoting *Purifoy v. Merc.-Safe Dep. & Trust,* 273 Md. 58, 66 (1974).

See also *State v. Berry,* 287 Md. 491, 496 (1980); *Coleman v. State,* 281 Md. 538, 546 (1977); *State v. Fabritz,* 276 Md. 416, 421-422 (1975), *cert. denied,* 425 U.S. 942 (1976). We have held here that the statute is so clear and unambiguous as not to be subject to interpretation. That which appellant seeks then, is not a right to interpret an obscure statute but to misinterpret a clearly written one. Furthermore, he

admitted that no problem existed at all with the common law crime definition of indecent exposure, and even admitted that the State had made out a prima facie case therefor. He wished only to read the Preamble of ch. 384, and argue alternatively, that the statute meant other than it clearly appeared or that it meant nothing.

Appellant relied upon *Dillon v. State, supra,* which held that a judge, having read the preamble of the handgun statute to a jury, was not in error. The Court added by way of dicta, that either counsel might have done the same. That result, however, was predicated upon the jury's right to construe dichotomous statutory offenses in a dubious factual situation.[4]

Appellant's purpose in reading the preamble to the jury was not intended as a "means of enlightenment", *Slansky v. State,* 192 Md. 94 (1949),[5] but solely to serve as an aid in the

---

**4.** "Since, under Article XV, Section 5 of our Constitution, a jury 'as Judges of the Law,' is free 'to construe [a statute] and apply it according to their own judgments,' *Franklin v. State* [12 Md. 236 (1858)], *supra,* and since the jury also has the right 'to decide whether the law should be applied in dubious factual situations,' *Hamilton [and Fletcher] v. State,* [12 Md. App. 91 (1971), *aff'd* 265 Md. 256 (1972)] *supra,* we think that a reading to the jury of the 'Declaration of Policy,' which the Legislature set forth as its preamble, in enacting the 'handgun' statute, constituted, as an advisory instruction, 'a means of enlightenment,' *Slansky v. State,* [192 Md. 94 (1949)] *supra,* in assisting the jury in understanding and construing the provisions of Art. 27, § 36B, and in determining whether the accused came within the operation of that penal statute.

This concept is here applicable with even greater force when the apparent dichotomous nature of the two sets of charges submitted to the jury for its verdict is considered. The appellant was charged in counts 1 and 7 with the felony of robbery 'with a dangerous and deadly weapon, to wit, a pistol,' in violation of Code (1957, 1971 Repl. Vol.) Art. 27, § 488; counts 5 and 12 charged that he 'unlawfully did use a handgun, to wit, a pistol, in the commission of a felony' (robbery), in violation of the newly enacted Art. 27, § 36B. To the average layman serving as a juror, counts 1 and 5, as well as counts 7 and 12, when read together as pairs, would appear to charge the appellant, though on different dates, with the very same offense. Counts 1 and 5, and the parallel counts, 7 and 12, contained elements common to each, *i.e.,* the use of a pistol in the commission of the felony of robbery, and it is not at all difficult to envision that a jury, unless specifically instructed, might consider the paired offenses to be identical, though charged in separate counts," Dillon v. State, 277 Md. 571, 583-584 (1976) (footnote omitted).

**5.** Ironically, Slansky v. State, *supra* at 107, states:
"When an advisory instruction has been given, the judge may prevent counsel from arguing contrary to the instruction. *Bell v. State,* 57 Md. 108."

Such seems no longer to be the law. See Wilson v. State, 239 Md. 245,

construction of the statute. But this he had no right to do because, while

> "[a] preamble may be resorted to in aid of construction of a statute if its meaning is doubtful ... a preamble forms no part of the act itself ... and the intention and meaning of the Legislature are to be collected from the law itself and are not to be restrained by anything in the preamble ...."
> *Gibson v. State,* 204 Md. at 432.

It is apparent that neither *Dillon* nor any other case of which we are aware permits counsel to argue a statutory construction contrary to the clear meaning of an unambiguous statute. To read a preamble of a statute directed toward punishment for the crime but not the substance of it would not be relevant to the jury's function of determining guilt or innocence as opposed to the preamble's purpose as a guide toward sentencing.

Academically, and even practically, since we cannot look behind jury verdicts, it may be said that a jury as judge of the law is not restrained by our interpretation even of the constitutional law which provides the jury with legal interpretative authority, *i.e.,* art. XV, § 5 itself. Assuming that premise for argument sake (*i.e.,* that court opinions cannot restrict the jury's scope of interpretation), courts can restrict that which is presented to the jury by argument or evidence. *Clarke v. State,* 238 Md. 11, 20 (1965). Evidence or argument intended to misconstrue a succinct and clearly written statute would (in this court's opinion) be improper, since art. XV, § 5 does not confer upon a jury the right to enact new law or ignore existing law. See *Hamilton and Fletcher v. State,* 12 Md. App. 91 (1971), *aff'd* 265 Md. 256 (1972). The provision which was intended at most to provide that juries in criminal cases were

> "not bound to abide by the interpretation of the court of the meaning of a law, but were free to

---

256-257 (1965), holding that Slansky and Bell have been superseded by Rule 6 (e) (later Rule 739 e and now Rule 757 g), although the "judge may express dissent from counsel's statements as to the law ...."

construe and apply it according to their own judgments," *Franklin v. State,* 12 Md. at 246,

simply means that their verdicts may be rendered unaccountably (as far as defendants are concerned) for any reason they choose, legal or factual. It does not bestow upon counsel (or the court) the right to mislead them in arriving at these verdicts.

Appellant was properly convicted under a clear law after a fair trial.

*Judgment affirmed.*
*Costs to be paid by appellant.*