509 A.2d 120

Jackie Kevin HARRIS

v.

STATE of Maryland.

No. 74, Sept. Term, 1983.

Court of Appeals of Maryland.

May 23, 1986.

346

George E. Burns, Jr. and Melissa M. Moore, Asst. Public Defenders (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Deborah K. Chasanow, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

MURPHY, Chief Justice.

On February 24, 1982, Jackie Kevin Harris entered pleas of guilty in the Circuit Court for Baltimore County to murder in the first degree, two counts of armed robbery, and a handgun violation. The court accepted the pleas and adjudged Harris guilty on all counts. Harris waived his right to be sentenced by a jury, and on April 5, 1982, the trial judge imposed the death penalty for the first degree murder, and consecutive sentences of imprisonment totaling 20 years for the remaining offenses.

On Harris's initial appeal, we affirmed the convictions, but vacated the death sentence on the ground that Harris's waiver of a jury at his sentencing had not been made knowingly and voluntarily. *See Harris v. State*, 295 Md.

329, 455 A.2d 979 (1983) (*Harris I*). Before his second sentencing proceeding, Harris moved under former Md.Rule 731 f 1 to withdraw his guilty pleas, alleging that the pleas had been entered without the effective assistance of counsel.[1] The court denied the motion, and a new sentencing proceeding was conducted before a jury. On July 22, 1983, Harris was again sentenced to death. We subsequently vacated the court's denial of Harris's motion to withdraw his guilty pleas, and remanded the case for a hearing on Harris's claim of ineffective assistance of counsel. *See Harris v. State*, 299 Md. 511, 474 A.2d 890 (1984) (*Harris II*).

On remand, the court conducted a plenary hearing and concluded that Harris had received effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States.[2] The court, therefore, again denied Harris's motion to withdraw his guilty pleas. In *Harris v. State*, 303 Md. 685, 496 A.2d 1074 (1985) (*Harris III*), we affirmed the order denying Harris's motion, and retained the case on our docket to review the death sentence, as required by Maryland Code (1957, 1982 Repl.Vol.), Article 27, § 414(a).[3]

The parties have submitted supplemental briefs, as we directed in *Harris III*. We have considered the issues raised by Harris challenging the legality of the death sen-

---

**1.** Md.Rule 731 was rescinded on July 1, 1984. The current provision governing withdrawal of guilty pleas prior to sentencing is Rule 4–242(f), which is substantively identical to former Md. Rule 731 f 1.

**2.** The Sixth Amendment provides in part that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." This right has been extended to state criminal prosecutions through its incorporation into the Due Process Clause of the Fourteenth Amendment. *See, e.g., Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Harris v. State*, 303 Md. 685, 694, 496 A.2d 1074 (1985). The same right is secured by Article 21 of the Maryland Declaration of Rights. *Id.* at 695 n. 3, 496 A.2d 1074.

**3.** Unless otherwise indicated, all statutory provisions cited in this opinion are within Article 27.

tence imposed upon him. We conclude that his sentence of death again must be vacated, and the case remanded for resentencing, because Harris is correct in his contention that he was denied his right of allocution.

## I.

Before selection of the sentencing jury, defense counsel informed the trial judge that Harris had chosen not to testify but wanted to "present allocution as ... in any normal sentencing proceeding.... It is my belief that that is his right...." The court reserved its ruling on the issue until later in the proceeding.

Following jury selection, the parties again addressed the issue of allocution. Defense counsel reiterated that Harris desired to allocute before the jury prior to closing arguments. The State argued that, if Harris elected to allocute, defense counsel would be precluded by § 413(c)(2) from presenting a summation or closing argument because the statute provided in the disjunctive that "[t]he State and the defendant *or* his counsel may present argument for or against the sentence of death." (Emphasis added.) The State asserted that allocution was nothing more than a form of argument within the contemplation of this statute.

In response, the defense counsel stated that

"[m]y argument to the jury on the facts does not constitute allocution by the Defendant. He does not wish to take the stand. He does not wish to testify. He wishes to make a plea for his life to the jury....

"It's not going to be a second jury argument, Your Honor. It is going to actually be the equivalent of what any defendant says after his counsel has put on evidence and made the argument to stand up and say to the judge, I'm sorry, ... so the judge can get an impression of his demeanor even though he chooses not to testify under oath for whatever reason, which is his option.

"That is what we wish to do. As I pointed out, it's absolutely required under the law. . . .

\* \* \* \* \* \*

". . . My client is not articulate enough to stand up there for an hour [or] two and plead for his life and integrate the facts. He shouldn't be required to do that, but at the same time he wants the opportunity to simply say, I'm sorry. Don't kill me."

Defense counsel then conferred with Harris, and indicated to the court that the following proffer contained the substance of what Harris would say during allocution before the jury:

"That it is difficult for him to stand in front of them. He's not good with words or to tell them what he means, but that he's sorry for his involvement in the offense, particularly so for the fact that the man died and for the grief that his family has suffered.

"He wishes there was some way that it could be otherwise. That he would ask them to consider . . . sparing his life and allowing him to live and receive a life sentence."

After hearing further argument by both parties, the court ruled as follows:

"I believe that . . . Article 27 Section 413 gives to the Defendant the right to address the jury but further gives to the Defendant the right to give up that right to have Counsel address the jury. The wording of the statute says . . . the Defendant or Counsel. The decision is the Defendant's whether he shall address the jury or whether [Counsel] shall address the jury, and that is for the two of you to decide, and at the appropriate time you can make that election, but it will not be that both of you shall address the jury."

After both parties' submission of evidence, but before closing arguments, defense counsel again addressed the court:

"[A]t this point ..., I would resubmit to the Court that my client wishes to allocute. He does not wish to waive the right to have me argue to the jury. He in fact does, and faced with that Hobson's choice, if you will, of either or, we'll submit to the Court's ruling and have me argue.

"We do maintain as we have maintained consistently that he has an absolute right to allocute in addition to his attorney. We have already put on the record the extent of allocution.

"... [W]e would ask Your Honor to reconsider at this point and allow my client to allocute.

"THE COURT: Just like any other sentencing proceeding, the Defendant has a right of allocution. The Defendant may elect to exercise that right and present himself through himself to the sentencing authority, the jury in this case or a judge in another case.

"This statute particularly and specifically grants the Defendant that right, but it further states in the statute ... that he can delegate that [right] to his Counsel. This Court is not depriving Mr. Harris of his right to address the jury. He may do so. If he elects to do so, [Counsel] may not argue, also.

"He may however waive his right to allocute personally and appoint [Counsel] to do that. He has made that decision."

## (A)

### Section 413(c)(2)

In *Booth v. State*, 306 Md. 172, 507 A.2d 1098 (1986), we explained the distinction between allocution and closing argument in the context of a capital sentencing proceeding. Although both contain unsworn statements in mitigation of the death penalty, and neither is subject to cross-examination, allocution, unlike closing argument, is not limited to the record in the case, inferences from material in the record, and matters of common human experience. 306 Md. at 198, 507 A.2d 1098; *see also Bassett v. Com.,*

222 Va. 844, 284 S.E.2d 844, 853 (1981), *cert. denied,* 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982).

As indicated earlier, § 413(c)(2) states that "[t]he State and the defendant or his counsel may present *argument* for or against the sentence of death." (Emphasis added.) Since allocution is neither synonymous with nor encompassed by the term "argument," the circuit court erred in concluding that this statute prevented Harris from both allocuting and having his counsel present a closing argument to the jury. The issue before us, therefore, is whether Harris had a right to allocute that was improperly denied at the sentencing proceeding.

### (B)

### *The Right of Allocution under the Maryland Rules*

Since 1962, the right of allocution in Maryland has been governed primarily by the rules of this Court. Md.Rule 761, adopted on January 1, 1962, applied in both capital and noncapital cases and provided in subsection (a) that "[b]efore imposing sentence the court shall afford an accused or his counsel an opportunity to make a statement and to present information in mitigation of punishment." In 1977, this rule was rescinded and the provision governing allocution was modified and incorporated into new Md.Rule 772.[4] Like former Md.Rule 761, the new rule, as originally adopted, applied in both capital and noncapital cases. Subsection (d) of Md.Rule 772, entitled "Allocution," provided that "[b]efore imposing sentence the court shall inform the defendant that he has the right, personally and through counsel, to make a statement and to present information in mitigation of punishment, and the court shall afford an opportunity to exercise this right."

---

**4.** Md.Rule 761 was rescinded and Md.Rule 772 adopted, effective July 1, 1977, as part of a comprehensive revision of the rules of criminal procedure.

By chapter 3 of the Acts of 1978, effective July 1, 1978, the General Assembly enacted § 413, the present capital sentencing statute. In response to this enactment, the Court adopted Md.Rule 772A, which substantially tracked the language of § 413 and applied only to capital sentencing proceedings. The rule did not contain any provision as to allocution. The Court also amended Md.Rule 772 to apply only to noncapital cases.[5]

Between January 1, 1979, and July 1, 1984, the Maryland Rules did not afford defendants in capital cases a right of allocution. It was during this period that Harris was sentenced to death. The right of allocution in capital cases was not again addressed in the Maryland Rules until the adoption of current Rule 4–343 as part of the comprehensive revision of the rules in 1984.[6] Rule 4–343, which superseded Md.Rule 772A, provides in subsection (d), entitled "Allocution," that in capital cases, "[b]efore sentence is determined, the court shall afford the defendant the opportunity, personally and through counsel, to make a statement."

That the Maryland Rules were silent between 1979 and 1984 as to the right of allocution in capital cases did not, of course, extinguish the right. The rescission of a rule of court, like the repeal of a statute, revives the preexisting common law, absent a clear contrary purpose. *See Lutz v. State,* 167 Md. 12, 17, 172 A. 354 (1934); *Neal v. State,* 45 Md.App. 549, 551, 413 A.2d 1386, *cert. denied,* 288 Md. 740 (1980); 2A N. Singer, *Sutherland on Statutes and Statutory Construction* § 50.01 (rev. 4th ed. 1984). Thus, when Md.Rule 772 was amended to apply only in noncapital cases, thereby removing capital cases from the purview of its allocution provision, the right of allocution in capital cases reverted to the common law of Maryland.

---

**5.** Md.Rule 772A was adopted and Md.Rule 772 was amended effective January 1, 1979.

**6.** Rule 4–343 became effective on July 1, 1984.

**354**

(C)

## The Common Law Right of Allocution

As originally recognized by the early common law, the right of allocution provided a defendant with a formal opportunity to disclose to the court, before it pronounced sentence, certain strictly defined legal impediments to sentencing: that the defendant had benefit of clergy, had obtained a pardon, or was insane, pregnant, or not the person named in the indictment. Because sentences for felonies were then rigidly mandated by law, and the trial judge, therefore, had no discretion in imposing sentence once the determination of guilt was made, allocutory pleas for mercy would have been unavailing and were not allowed. 4 W. Blackstone, *Commentaries on the Laws of England* 368–71 (1769); Barrett, *Allocution,* 9 Mo.L.Rev. 115, 120–24 (1944); Note, *Procedural Due Process at Judicial Sentencing for Felony,* 81 Harv.L.Rev. 821, 821–22, 832–33 (1968).

At the time the right of allocution originated, a criminal defendant had no right to counsel and was incompetent to testify on his own behalf; thus, allocution was the defendant's only opportunity to address the court. Allocution was therefore viewed as an essential procedural right, and a court's failure to ask a defendant "Do you know of any reason why judgment should not be pronounced upon you?" was held to be reversible error, at least in capital cases. *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961); *Barrett, supra,* at 115–19; Cohen, *Sentencing, Probation, and the Rehabilitative Ideal: The View from Mempa v. Rhay,* 47 Tex.L.Rev. 1, 9 (1968); Annot., 96 A.L.R.2d 1292, 1295 (1964).

The right of allocution existed in 1776 in essentially the form above outlined: it was a formal, narrowly defined right viewed as an essential part of the criminal sentencing procedure. This, therefore, was the nature of the common

law right originally secured for the citizens of Maryland by Article 5 of the Declaration of Rights.[7]

By the mid-nineteenth century, however, the right of allocution had undergone significant changes. As sentencing statutes prescribing ranges of penalties rather than fixed penalties became more common, judicial discretion assumed a significant role in the sentencing process. Presumably in response to the trial courts' newly vested discretion, the scope of allocution was broadened, permitting a criminal defendant to inform the court of any mitigating factors relevant to sentencing, or simply to plead for leniency. *See* 1 J. Chitty, *Criminal Law* 571 (1819); Cohen, *supra*, at 9; Note, *supra*, at 822–23; Note, *The Admissibility of Character Evidence in Determining Sentence*, 9 U.Chi.L.Rev. 715, 715–16 (1942).

On the other hand, because the defendant's rights to obtain counsel and to testify at trial adequately protected most of the interests previously safeguarded only by allocution, the importance of allocution declined. Although many states continued to view allocution as an essential part of the sentencing process, and some passed statutes to this effect, a substantial number of jurisdictions came to regard allocution as an obsolete and unnecessary ceremony, even in capital cases. Other states concluded that, while allocution continued to serve a useful function, its omission was not reversible error and did not necessarily require resentencing. Annot., *supra*, at 1295–1301; Barrett, *supra*, at 126–43, 232–53.

We first addressed the nature of the right of allocution in *Dutton v. State*, 123 Md. 373, 91 A. 417 (1914). There, the

---

7.  Article 5 provides in part:
    "That the Inhabitants of Maryland are entitled to the Common Law of England . . ., according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity. . . ."

defendant had been sentenced to death without first being asked whether he wanted to make a statement before the court. On appeal, we reviewed the relevant rules of criminal procedure then in existence, and acknowledged that "most of the reasons originally given for the adoption of [the] practice [of allocution] are not applicable in this State." 123 Md. at 381, 91 A. 417. We further observed, however, that "[i]n capital cases the practice, so far as we are aware, has been followed throughout this State, and in most of the Circuits in all penitentiary cases." *Id.* at 383, 91 A. 417.

*Dutton* strongly endorsed the practice, and recommended that trial courts provide an opportunity for allocution in all cases in which sentences of death or imprisonment in the penitentiary could be imposed. The Court explained that allocution, in its modern form, could provide the sentencing court with information that might well influence the exercise of its sentencing discretion. The Court held, nevertheless, that

> "it is not reversible error, even in capital cases, not to ask the prisoner if he has any reason to give why sentence should not be passed, unless it is apparent that the prisoner was or may have been injured by the omission."
> *Id.* at 383, 91 A. 417.

Where such actual or potential injury was shown, the Court indicated that the appropriate remedy would be a new sentencing proceeding. *Id.* at 382, 384, 91 A. 417. The principles of *Dutton* were applied without modification as recently as the late 1950s in subsequent death penalty cases, *see, e.g., Farrell v. State,* 213 Md. 348, 354–55, 131 A.2d 863 (1957); *Duker v. State,* 162 Md. 546, 548, 160 A. 279 (1932), and in noncapital cases, *see, e.g., Culley v. Warden,* 218 Md. 639, 641, 145 A.2d 226, *cert. denied,* 358 U.S. 921, 79 S.Ct. 296, 3 L.Ed.2d 241 (1958); *Henwood v. Superintendent,* 215 Md. 607, 608, 137 A.2d 210 (1957); *Pride v. Warden,* 215 Md. 601, 602, 137 A.2d 175 (1957).

*Dutton* and its progeny thus embody the common law right of allocution as it existed when we adopted Md.Rule

761 in 1962. Of course, as we have frequently emphasized, the principles of the common law are not immutable. Indeed, one of the hallmarks of the common law, and the key to its continued vitality, is its capacity for growth in response to changing societal values and circumstances. *See, e.g., Kelley v. R.G. Industries*, 304 Md. 124, 140–41, 497 A.2d 1143 (1985); *Jones v. State*, 303 Md. 323, 337 n. 10, 493 A.2d 1062 (1985); *Jones v. State*, 302 Md. 153, 160–61, 486 A.2d 184 (1985); *Evans v. State*, 301 Md. 45, 57, 481 A.2d 1135 (1984), *cert. denied sub nom. Grandison v. Maryland*, —— U.S. ——, 105 S.Ct. 1411, 84 L.Ed.2d 795 (1985); *Frey v. Frey*, 298 Md. 552, 557, 471 A.2d 705 (1984).

■ Our cases applying the Maryland rules governing allocution have altered the principles of *Dutton* to some extent. We have previously indicated that, because the right of allocution is not a fundamental right secured by either the federal or state constitution, it is waived if not asserted by the defendant before sentencing. *See Logan v. State*, 289 Md. 460, 487, 425 A.2d 632 (1981); *Robinson v. Warden*, 242 Md. 171, 172–73, 218 A.2d 217 (1966); *see also Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). This principle of waiver is equally applicable to the common law right of allocution, and supersedes the "actual or potential injury" standard of *Dutton*.

None of our cases have addressed precisely the situation presented in the case now before us, in which a defendant requesting an opportunity to allocute was affirmatively denied such an opportunity. *Dutton* and its progeny involved a trial court's mere failure to advise a defendant regarding the exercise of a common law procedural right; the trial court's action in the present case, in denying a defendant an opportunity to exercise that right, constitutes a serious breach of procedural fairness. In determining the appropriate remedy, we must consider the function and significance of the right of allocution in the current capital sentencing process.

**358**

■ In recent years, the nature of the capital sentencing process in Maryland has changed dramatically. The Maryland capital sentencing statute, enacted in 1978, specifies that a sentence of death may not be imposed unless at least one statutorily enumerated aggravating circumstance be proven beyond a reasonable doubt, and then only if the proven aggravating circumstances outweigh any mitigating circumstances. § 413; *Foster, Evans and Huffington v. State,* 305 Md. 306, 309–14, 503 A.2d 1326 (1986) (on motion for reconsideration); *Foster v. State,* 304 Md. 439, 471–80, 499 A.2d 1236 (1985). Since 1979, the statute has expressly required the sentencing authority to consider any facts it finds to be mitigating. *See* § 413(g)(8).[8] Section 413(c)(1)(i) states that any evidence relating to any mitigating circumstance is admissible at the capital sentencing proceeding. These statutory provisions reflect a strong public policy of providing the sentencing body in capital cases with the broadest possible range of relevant information that may counsel leniency.

■ As we observed in *Kent v. State,* 287 Md. 389, 394–95, 412 A.2d 1236 (1980), "[a] previously held opinion regarding the appropriate sentence may well be modified after listening to ... defendant's statements in mitigation of punishment." Although evidence of mitigating circumstances, including the defendant's remorse, if any, can be introduced by means other than allocution, the allocutory process provides a unique opportunity for the defendant himself to face the sentencing body, without subjecting himself to cross-examination, and to explain in his own words the circumstances of the crime and his feelings regarding his conduct, culpability, and sentencing. Indeed, even "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States, supra,* 365 U.S. at 304, 81 S.Ct. at 655.

---

8. Paragraph (8) was added to § 413(g) by chapter 521 of the Acts of 1979, and became effective on July 1, 1979.

These considerations are reflected in our current Rule 4–343, subsection (d) of which requires the court in a capital sentencing proceeding to afford the defendant an opportunity to allocute if the defendant so requests. Most modern commentators strongly advocate retention of the right of allocution, recognizing that the practice in its present form serves a significant function no other procedural device can completely replace. *See, e.g.*, 3 American Bar Association, *Standards for Criminal Justice*, Standard 18–6.4(a)(iii) (2d ed. 1986); W. LaFave & J. Israel, *Criminal Procedure* § 25.1(f) (1985); National Conference of Commissioners on Uniform State Laws, *Model Sentencing and Corrections Act* § 3–206(b) (1978); National Conference of Commissioners on Uniform State Laws, *Uniform Rules of Criminal Procedure*, Rule 613(2) (1974); Council of Judges, National Council on Crime and Delinquency, *Guides for Sentencing* 43 (2d ed. 1974); National Advisory Commission on Criminal Justice Standards and Goals, *Corrections* § 5.17 (1973); Cohen, *supra*, at 9–11.

We conclude that, under the common law applicable to capital sentencing proceedings at the time Harris was sentenced, a defendant who timely asserts his right to allocute, and provides an acceptable proffer, must be afforded a fair opportunity to exercise this right. If the right so asserted is denied by the court, as here, the sentence must be vacated and a new sentencing proceeding conducted.

In so holding, we do not suggest that the exercise of this right may be unlimited as to either duration or content. Although a sentencing court may not deny a defendant who elects to allocute a fair opportunity to exercise his right, the court may in its discretion curtail allocution that is irrelevant or unreasonably protracted.

## II.

An additional issue raised in this appeal concerns the admissibility at Harris's capital sentencing proceeding of an

Agreed Statement of Facts. As this question will undoubtedly arise again on remand, we shall consider it in the interest of providing guidance to the circuit court on resentencing.

During the guilt-determining stage of the trial, the State introduced an Agreed Statement of Facts in support of Harris's guilty pleas.[9] As we observed in *Harris III*, "[t]he statement of facts established, beyond reasonable doubt, the corpus delicti of the first degree murder of Hviding and Harris's criminal agency as a principal in the first degree." 303 Md. at 714, 496 A.2d 1074. The statement was signed by Harris, Harris's attorney, and the two prosecutors, and declared that "[t]he following facts are agreed to by [Harris], individually and through his attorney, ... and by the State of Maryland, ... as a true and accurate statement of facts regarding the murder of Stephen Hviding." After the statement was read into the trial record, the court asked Harris whether he had indeed agreed to the facts contained in the statement. Harris replied, "Yes, sir."

At the second sentencing proceeding, the court permitted the State to introduce the statement over Harris's objection. Harris raises two challenges to the admissibility of the statement at the sentencing stage of the trial. First, he maintains that the introduction of this statement for consideration by the sentencing jury violated his right, secured by the Sixth and Fourteenth Amendments, to confront and cross-examine witnesses against him. Harris also asserts that the statement was inadmissible under § 413(c)(1), which governs the admissibility of evidence in a capital sentencing proceeding.

---

**9.** Before accepting a guilty plea, a trial court must determine, *inter alia*, that the plea is supported by a strong factual foundation. Md. Rule 731c (superseded July 1, 1984, without substantive change, by Rule 4-242(c) ); *State v. Brazle*, 296 Md. 375, 382, 463 A.2d 798 (1983); *Hudson v. State*, 286 Md. 569, 595-96, 409 A.2d 692 (1979), *cert. denied*, 449 U.S. 845, 101 S.Ct. 128, 66 L.Ed.2d 53 (1980).

(A)

## The Right of Confrontation

The Sixth Amendment to the federal constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." This right has been extended to state criminal prosecutions through the Fourteenth Amendment. *See Pointer v. Texas,* 380 U.S. 400, 403–06, 85 S.Ct. 1065, 1067–69, 13 L.Ed.2d 923 (1965). Because the basic requirements of due process apply during all stages of a criminal trial, it is clear that the right of confrontation extends to a capital sentencing proceeding. *Williams v. New York,* 337 U.S. 241, 250–52, 69 S.Ct. 1079, 1084–86, 93 L.Ed. 1337 (1949); *Tichnell v. State,* 290 Md. 43 *passim,* 427 A.2d 991 (1981); *Engle v. State,* 438 So.2d 803, 813–14 (Fla.1983), *cert. denied,* 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 753 (1984); *cf. Green v. Georgia,* 442 U.S. 95, 96–97, 99 S.Ct. 2150, 2152, 60 L.Ed.2d 738 (1979); *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977); *State v. Collins,* 265 Md. 70, 82, 288 A.2d 163 (1972).

The Supreme Court of the United States has, on several occasions, explained the policies underlying the Confrontation Clause. *See, e.g., Delaware v. Fensterer,* —— U.S. ——, ————————, 106 S.Ct. 292, 295–96, 88 L.Ed.2d 15 (1985); *Ohio v. Roberts,* 448 U.S. 56, 62–66, 100 S.Ct. 2531, 2537–39, 65 L.Ed.2d 597 (1980); *Dutton v. Evans,* 400 U.S. 74, 80–83, 89, 91 S.Ct. 210, 215–17, 219, 27 L.Ed.2d 213 (1970); *California v. Green,* 399 U.S. 149, 155–64, 90 S.Ct. 1930, 1933–38, 26 L.Ed.2d 489 (1970). In *Green,* the Court observed that

"it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:

'The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases,

being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' *Mattox v. United States,* 156 U.S. 237, 242–243 [15 S.Ct. 337, 339, 340, 39 L.Ed. 409] (1895)." 399 U.S. at 157–58, 90 S.Ct. at 1934–35.

Similarly, in *Dutton v. Evans, supra,* the Court stated that "the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' " 400 U.S. at 89, 91 S.Ct. at 220 (citations omitted).

Viewed against this background, Harris's argument is clearly without merit: the policies underlying the Confrontation Clause are not implicated where the testimony at issue is the judicial admission of the defendant himself. Furthermore, even under a traditional Confrontation Clause analysis, the introduction of the statement during the sentencing proceeding did not violate Harris's right of confrontation. In *Ohio v. Roberts, supra,* the Supreme Court explained that

"[t]he Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. . . .

"The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to aug-

ment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'" 448 U.S. at 65, 100 S.Ct. at 2539 (citations omitted).

Had Harris wished to take the stand during the sentencing proceeding to explain or supplement the facts recited in the statement, he was free to do so. However, because the State could not compel Harris to testify during the proceeding, *see Estelle v. Smith*, 451 U.S. 454, 462–63, 101 S.Ct. 1866, 1872–73, 68 L.Ed.2d 359 (1981), he was unavailable within the meaning of *Ohio v. Roberts, supra.* In addition, the veracity of the statement was ensured by exceedingly strong indicia of reliability: Harris's statement implicated Harris himself as the principal in the first degree to a first degree murder, and the statement was both signed by Harris and acknowledged by him in open court.

An argument similar to that now advanced by Harris was summarily rejected by the Supreme Court in *Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959). The petitioner in that case had pleaded guilty to kidnapping, a capital offense in Oklahoma at that time, and had waived the formal sentencing procedure provided by state statute. After adjudging the petitioner guilty, the trial court permitted the prosecutor to deliver an oral statement relating the facts surrounding the crime and reciting the petitioner's past criminal record. Before imposing sentence, the court asked the petitioner whether he wanted to make any correction to the prosecutor's statement. The petitioner responded in the negative, and stated that the facts recited in the statement were true. The court then sentenced the petitioner to death.

Before the Supreme Court, the petitioner argued that by permitting the prosecutor to introduce the unsworn statement reciting the details of the crime the trial court had denied him his right of confrontation and cross-examination.

The Court, responding to this argument, reiterated that "after the State's Attorney had made his statement, petitioner, upon interrogation by the court, stated that the recitals of that statement were true.... This alone should be a complete answer to the contention." 358 U.S. at 584, 79 S.Ct. at 426. The Court proceeded, however, to review its opinion in *Williams v. New York, supra,* in which it held that,

"once the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics." 358 U.S. at 584, 79 S.Ct. at 426.

The Court concluded that "[t]hese considerations make it clear that the State's Attorney's statement of the details of the crime and of petitioner's criminal record—all admitted by petitioner to be true—did not deprive petitioner of fundamental fairness or of any right of confrontation or cross-examination." *Id.;* cf. *Gregg v. Georgia,* 428 U.S. 153, 164 n. 8, 96 S.Ct. 2909, 2921 n. 8, 49 L.Ed.2d 859 (1976) (plurality opinion) (Georgia death penalty procedure, under which the judge at the sentencing proceeding was required to consider the factual basis of a defendant's guilty plea, upheld against challenge that the procedure violated the Eighth and Fourteenth Amendments).

Other courts that have addressed the issue have uniformly held that the introduction into evidence of a defendant's admission does not violate the Confrontation Clause. *See, e.g., United States v. Lemonakis,* 485 F.2d 941, 948–49 (D.C.Cir.1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974); *People v. Norman,* 252 Cal.App.2d 381, 409–10, 60 Cal.Rptr. 609 (1967), *cert. denied,* 391 U.S. 923, 88 S.Ct. 1819, 20 L.Ed.2d 661 (1968); *State v. McClain,* 254

La. 56, 222 So.2d 855, 856–57 (1969), *cert. denied,* 399 U.S. 911, 90 S.Ct. 2205, 26 L.Ed.2d 566 (1970); *State v. Spica,* 389 S.W.2d 35, 46–47 (Mo.1965), *cert. denied,* 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966); *Commonwealth v. Cavell,* 425 Pa. 365, 228 A.2d 647, 652 (1967).

### (B)

### *Section 413(c)(1)*

Harris also argues that the Agreed Statement of Facts was inadmissible under § 413(c)(1), the statutory provision governing the admissibility of evidence in a capital sentencing proceeding. This statute provides that

"[t]he following type of evidence is admissible in this proceeding:

(i) Evidence relating to any mitigating circumstance listed in subsection (g);

(ii) Evidence relating to any aggravating circumstance listed in subsection (d) of which the State had notified the defendant pursuant to § 412(b);

(iii) Evidence of any prior criminal convictions, pleas of guilty or nolo contendere, or the absence of such prior convictions or pleas, to the same extent admissible in other sentencing procedures;

(iv) Any presentence investigation report. However, any recommendation as to sentence contained in the report is not admissible; and

(v) Any other evidence that the court deems of probative value and relevant to sentence, provided the defendant is accorded a fair opportunity to rebut any statements."

In applying § 413(c)(1) in *Johnson v. State,* 292 Md. 405, 439 A.2d 542 (1982), we indicated that "[a]s is true in all other criminal causes, the sentencing authority in a death penalty case should be presented with a full range of relevant information so as to fashion a particular penalty in accord with 'the prevalent modern penal philosophy of individualized punishment.'" 292 Md. at 443, 439 A.2d 542

(citations omitted). Our cases illustrate that this statute provides the trial court at a capital sentencing proceeding with broad authority to admit evidence it deems probative and relevant to sentencing. *See, e.g., Thomas v. State,* 301 Md. 294, 329–31, 483 A.2d 6 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985); *White v. State,* 300 Md. 719, 739–40, 481 A.2d 201 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1779, 84 L.Ed.2d 837 (1985); *Calhoun v. State,* 297 Md. 563, 596–601, 468 A.2d 45 (1983), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2374 (1984); *Johnson, supra,* 292 Md. at 441–44, 439 A.2d 542.

In *Thomas, supra,* we said that "[d]ecisions on the relevance of evidence rest in the sound discretion of the trial court and will not be reversed absent a showing that such discretion was clearly abused." 301 Md. at 317, 483 A.2d 6 (citations omitted). Harris has failed to show that the trial court abused its discretion in admitting the statement. Indeed, as a concise narrative of the facts surrounding the murder, and as the complete factual predicate of the conviction itself, the statement was highly probative and relevant to sentencing, and thus admissible under subparagraph (v). Furthermore, the statement contained evidence relating to the aggravating circumstance which the State sought to establish: the fact that the murder occurred during an armed robbery. The portions of the statement relevant to this aggravating circumstance were, therefore, also admissible under subparagraph (ii).

Our opinion in *Tichnell v. State,* 290 Md. 43, 427 A.2d 991 (1981), upon which Harris relies, is inapposite to our holding here. *Tichnell,* unlike the case now before us, arose from a murder prosecution in which the defendant pleaded not guilty and was convicted after a full trial, including an evidentiary hearing at which the facts were vigorously contested. At his first sentencing proceeding, Tichnell was sentenced to death. His sentence was vacated on appeal, however, and a new jury was impanelled for resentencing. At the second sentencing proceeding, the court, over Tich-.

nell's objection, permitted the transcript of his trial to be read to the new jury in lieu of requiring the live testimony of the witnesses themselves. Tichnell was again sentenced to death.

On his second appeal to this Court, Tichnell argued that the recorded trial testimony was inadmissible under § 413(c) because its use denied him an opportunity to cross-examine the witnesses before the new jury. Tichnell's strategy during the sentencing proceeding was to negate or allay the testimony of certain of the State's witnesses regarding the circumstances of the killing. We emphasized that the opportunity to observe Tichnell's cross-examination of the State's witnesses, and thereby perceive the witnesses' demeanor and otherwise assess their credibility, was essential to the jury's determination of the existence and weight of aggravating and mitigating circumstances. We therefore held that,

> "[a]bsent agreement of the parties, or a showing of unavailability of the witnesses to testify at the separate sentencing hearing, ... § 413(c) does not permit, over timely objection, the admission in evidence before a new sentencing jury of the prior recorded trial testimony to prove the existence or absence of aggravating or mitigating circumstances." 290 Md. at 63.

This holding is clearly inapplicable to the present case: the Agreed Statement of Facts is not analogous to recorded trial testimony. As *Tichnell* illustrated, the difficulties attendant upon the use of a trial transcript at sentencing arise from the sentencing body's need to assess witnesses' credibility. Such difficulties do not arise where, as here, the parties have agreed to the truth of the facts contained in the statement. We conclude that nothing in § 413(c) precludes the sentencing body from considering an Agreed Statement of Facts originally introduced in support of a guilty plea.

JUDGMENT OF THE CIRCUIT COURT FOR BALTI- MORE COUNTY IMPOSING A DEATH SENTENCE VA-

CATED; CASE REMANDED TO THAT COURT FOR A NEW SENTENCING PROCEEDING IN CONFORMITY WITH THIS OPINION. COSTS TO BE PAID BY APPEL-LEE.

COLE, Judge, concurring.

I concur with the Court in its holding that Harris's sentence must be vacated because he was denied his common law right of allocution. However, I write separately to reaffirm my dissenting opinion in *Harris v. State*, 303 Md. 685, 724, 496 A.2d 1074, 1089 (1985). In that dissent, I indicated that Harris was denied his sixth amendment right to effective assistance of counsel for two principal reasons: (1) his lawyer entered a guilty plea to a charge of first degree murder as a principal in the first degree, notwithstanding the availability of a viable defense based upon the distinction between first and second degree principals in death penalty cases; and (2) Harris's counsel accepted an Agreed Statement of Facts in which Harris admitted to being a principal in the first degree, without extracting some meaningful *quid pro quo* from the State.

Today, the Court holds that this same Agreed Statement of Facts is admissible before the sentencing body to determine whether Harris lives or dies. Thus, the consequences of defense counsel's mistake as to the Agreed Statement of Facts become all the more obvious.