**Robert Don DUCKETT, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–89–644.**

Court of Criminal Appeals of Oklahoma.

Oct. 17, 1995.

Rehearing Denied July 25, 1996.

Kurt Geer, Joe Ruffin, Assistant Public Defenders, Oklahoma City, for appellant at trial.

Carolyn L. Merritt, Dora S. Roberts, Assistant Public Defenders, Oklahoma City, for appellant on appeal.

Robert H. Macy, District Attorney, Brad Miller, Assistant District Attorney, Oklahoma City, for the State at trial.

Susan Brimer Loving, Attorney General of Oklahoma, A. Diane Blalock, Assistant Attorney General, Oklahoma City, for the State on appeal.

### *OPINION*

JOHNSON, Presiding Judge:

Robert Don Duckett, Appellant, was charged, tried and convicted of the crimes of Murder in the First Degree, Concealing Stolen Property and Larceny of an Automobile in the District Court of Oklahoma County, Case No. CRF–88–6248. The State filed a Bill of Particulars asking for the death penalty, and the jury found evidence of five aggravating circumstances: 1) that Mr. Duckett was previously convicted of a violent felony; 2) that the murder was especially heinous, atrocious or cruel; 3) that the murder was committed for the purpose of avoiding arrest or prosecution; 4) that the murder was committed while Mr. Duckett was serving a sentence of imprisonment; and 5) that Mr.

Duckett constituted a continuing threat to society. The jury set punishment at death, 25 years and 10 years imprisonment, respectively. The trial court sentenced accordingly with the sentences on the lesser counts to run concurrently. Appellant does not contest the validity of the convictions on the second and third counts.

Appellant raised thirty-two propositions of error. While we found several errors, none, singly or cumulatively, warrant reversal of the judgment or modification of the sentence. We affirm the judgment and sentence of death.

On October 18, 1988, John Howard was found dead in his apartment. He had been severely beaten with a fireplace poker and the wooden stand of an ashtray. His hands and feet were bound with wire from a hanger. There were blood stains and spatters in all rooms but the two bedrooms of the apartment. His keys and car were missing, and over $200.00 was missing from the convenience store where John was a manager.

A few weeks prior to this, John had befriended a young transient male, Appellant, and helped him to obtain employment at the State Fair. He later offered Appellant a job helping with odd jobs at the convenience store which he managed, and offered to let Appellant stay with him. The deceased was unaware that Appellant was an escapee from prison, who had been convicted of robbery by force.

On November 1, 1988, Appellant was arrested in Clear Creek, Arizona. He was driving John Howard's car at the time. He had switched the license plates on John's car with the plates of another car in the parking lot of the victim's apartment complex. Found in the trunk were a blood-stained jacket and Levis and the bank bags from the store.

During questioning by Oklahoma authorities, Appellant admitted that he and John had a fight where five or six blows were exchanged, but that when he left, John was on his feet and breathing. He further told authorities that he had only bound John's hands to keep him from coming after him. Being an escapee, he was also afraid that

John was going to call the cops on him. He told authorities that he had been gang-raped in prison, and that he and Mr. Howard were fighting over a homosexual pass Mr. Howard made toward him.

The State's case consisted of evidence which proved an unprovoked attack by Appellant in order to rob Mr. Howard and a murder to prevent Mr. Howard from having Appellant arrested. There was evidence that the victim was beaten with a fireplace poker and the wooden stand from an ashtray. His ankle was broken and he had been struck at least 19 separate times. Among various other head wounds, his skull was fractured in numerous places and his left eye was ruptured and punctured. There were blood spatters both high and low on the walls, indicating that Appellant continued to beat him after he was on the ground and incapable of running away. Blood smears on the victim's jeans indicate that he either was trying to crawl away or was dragged through the blood. Blood spatters on the windows and the closed curtains indicate that Appellant beat the victim with the curtains open, and then continued to beat the victim after stopping to close the curtains. The victim's hands and feet were bound with wire, and he had, at one point, been gagged with a rolled up sock and a bandanna. While the medical examiner could not tell if the wires were added before or after the beating ended, Dr. Choi did testify that there were bruises under the wire. Appellant stole the victim's keys and robbed the convenience store where the victim worked. Appellant also changed the license plates on the victim's car with another car in the parking lot and stole the victim's car.

Other relevant facts will be discussed in the assignments of error to which they relate.

## I. PRETRIAL ISSUES

█ In his first assignment of error, Appellant asserts he was denied effective assistance of counsel by the trial court's refusal to grant his attorney's request for a continuance. This case was set for trial on June 19, 1989. On June 2, 1989, the prosecution filed its bifurcated witness list distinguishing be-

tween first and second stage witnesses, endorsing 56 and 73 witnesses, respectively. Defense counsel moved for a continuance, which was denied. On June 5, 1989, the State provided defense counsel with second stage evidence summaries, and on June 14, 1989, the prosecution filed two amended witness lists, increasing the number of witnesses to 57 (first stage) and 74 (second stage). Defense counsel again moved for a continuance due to his inability to contact witnesses. On June 16, 1989, this motion was also denied.

Appellant contends that his rights to effective assistance of counsel were hampered by the excessiveness of the witness lists because his counsel was unable to contact all the people on the list in such a short period of time. Appellant further contends that defense counsel was also hampered by not knowing exactly which witnesses would be called during trial, therefore, spreading his resources too thin to effectively defend his client.

To show ineffective assistance of counsel, a defendant must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, he must show that the performance of trial counsel was deficient. That is, that trial counsel was not really acting as "counsel" at all, that his representation was unreasonable under prevailing professional norms, and that the challenged action could not be considered sound trial strategy. Second, a defendant must show that trial counsel's performance prejudiced him and the outcome of the case. Any showing that the outcome would have been different is sufficient. *Fisher v. State*, 736 P.2d 1003, 1011–1012 (Okl.Cr.1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988).

Here, Appellant did not show that he was unduly prejudiced by any of the testimony of the State's witnesses. There is nothing to show that a more extensive investigation would have helped his defense. As to the first stage, of the 17 witnesses called by the state, three (3) were not listed on the original Information. They were on the June 2nd list, thus giving defense counsel adequate time to investigate before trial.

As for the second stage of trial, Appellant also fails to show how he was prejudiced or unprepared for trial. Of the 74 names on the second-stage witness list, six were called. Of those six, one witness, David Britten, lived out of state. Counsel was allowed to interview David Britten prior to the second-stage of trial. Appellant has failed to show that he was unprepared to cross-examine any of these witnesses.

██ Where defense counsel is surprised at such action, he should withdraw his announcement of ready for trial and file a motion for postponement or continuance, in which he should set out the facts constituting such surprise and the other evidence, if any, he could produce to rebut the testimony of such additional witnesses if the trial of the case is continued. Where he fails to do this, the error, if any, is waived. *Jones v. State*, 542 P.2d 1316, 1324 (Okl.Cr.1975). In this case, there was no showing of surprise by defense counsel. We note that it is the policy of the Oklahoma County District Attorney's office to have an open file policy. This argument is without merit.

## II. ISSUES RELATING TO JURY SELECTION

██ In his third assignment of error, Appellant claims that the trial court excused for cause Juror Weaver who, although against the death penalty, agreed to be fair and follow the law, while refusing to excuse Juror Hodge, who expressly admitted his inability to follow the law. We do not agree with Appellant's assessment of the trial court's actions. After much effort to determine Juror Weaver's ability to follow the law, the following ensued:

THE COURT: What you're telling me is you cannot divorce yourself from the individual to become that of the voice of the State of Oklahoma; is that right?

JUROR WEAVER: I think so.

MR. GEER: And, you could follow the law that the Judge gives you.

JUROR WEAVER: Except for in the case of the death penalty, I'm not too sure.

In *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851–852 (1985), the Supreme Court held that the test for whether a juror has been properly excused is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Applying this standard to Juror Weaver's responses, he was properly excused. He clearly indicated his inability to follow the law that was given to him by the court. In *Dutton v. State,* 674 P.2d 1134, 1138 (Okl.Cr.1984), we held that a juror was properly dismissed who stated he or she did not think he (she) could consider the death penalty. Therefore, it was not error to dismiss Juror Weaver.

■ Even though Juror Hodge expressed some reservations over his ability to find for Appellant, knowing that Appellant had admitted killing someone, he was properly not excused for cause. During voir dire, he expressed concern over his ability to find Appellant not guilty or not guilty by reason of insanity knowing that Appellant had admitted killing the victim. However, when specifically asked if he could be a fair and impartial juror, Juror Hodge responded he would hope that he could.

After the elements that the state would have to prove, the burden of proof, and more of the law were explained to Juror Hodge, he was again asked, if under those circumstances, did he think he could be a fair juror in the trial. Juror Hodge responded that he thought that he could. Even though Juror Hodge clearly expressed his reservations about giving a verdict of not guilty or not guilty by reason of insanity when he knew that Appellant had admitted killing the victim, the test is whether he would be able to lay aside his opinions and impressions and render a verdict solely on the evidence presented in court. *Wooldridge v. State,* 659 P.2d 943, 946 (Okl.Cr.1983). *See also Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

■ Juror Hodge did state that he could be fair and follow the law. In addition, defense counsel, after continued voir dire of Juror Hodge, passed him for cause, from which it can be inferred that he had no problem with that particular juror and was waiving any challenge. Also, defense counsel was not so opposed to Juror Hodge so as to be compelled to use one of his peremptory challenges. Therefore, Appellant waived any possible problems he had with Juror Hodge. This proposition is without merit.

In his fourth assignment of error, Appellant contends that the jury was selected pursuant to a scheme where certain cognizable classes of citizens were not part of the jury pool. Appellant asserts that 38 O.S.Supp. 1987, § 18 and 38 O.S.1981, § 28(A) are unconstitutional. We have previously addressed this argument and found no merit. *See Sellers v. State,* 809 P.2d 676, 681–682 (Okl.Cr.1991), *cert. denied,* 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991); *Fox v. State,* 779 P.2d 562, 566 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Moore v. State,* 736 P.2d 161, 165–166 (Okl.Cr.1987), *cert. denied,* 484 U.S. 873, 108 S.Ct. 212, 98 L.Ed.2d 163 (1987); *Williams v. State,* 509 P.2d 681, 684 (Okl.Cr.1973).

### III. FIRST STAGE ISSUES

■ Appellant's second proposition of error is two-fold. First, he asserts that discovery abuse by the State denied him due process and a fundamentally fair trial. Second, he asserts that improper rebuttal evidence deprived him of a fair trial. Appellant contends that the State acted in bad faith by failing to disclose the correct address of David Britten. The State contended that the address given was the last known address for Mr. Britten. However, Mr. Britten was in prison in the State of Washington, a fact known by the prosecution but not revealed to defense counsel.

The purpose in furnishing a defendant with names and addresses of witnesses to be used by the State is to apprise him who the witnesses are and where they may be found. *Sprouse v. State,* 441 P.2d 481, 484 (Okl.Cr. 1968). The State did not disclose to defense counsel a more definite address of the witness when requested by the defense. We admonish the State to be candid and fair and to disclose.

However, in view of the overwhelming evidence against Appellant and the fact that Appellant was able to produce his own rebuttal witnesses to rebut David Britten's rebuttal testimony, we find no reversible error. Appellant was able to interview Mr. Britten prior to his rebuttal testimony, and clearly knew what his testimony was going to be. As such, Appellant was not prejudiced by not having access to the witness prior to trial.

Additionally, Mr. Britten was a rebuttal witness, who testified that Mr. Duckett displayed homosexual tendencies during his years in prison. This testimony was used to rebut Appellant's defense that he was repulsed and frightened by a homosexual advance made by the victim due to the fact that he was gang-raped in prison. Witnesses presenting clearly rebuttal evidence need not be endorsed. *Lavicky v. State*, 632 P.2d 1234, 1237 (Okl.Cr.1981).

Appellant also contends in this proposition that the State failed to disclose prior to trial its agreement with Mr. Britten regarding a pending weapons charge against him in LeFlore County. The charge was indeed dropped by the State on July 3, 1989. However, the record clearly indicates that the State brought up the deal during its direct examination of Mr. Britten. Mr. Britten stated that he hoped that the charges against him would be dropped. Defense counsel showed no surprise, and in fact, more than adequately assured that the jury knew that Mr. Britten could receive a deal from the State in exchange for his testimony. We find this proposition to be without merit.

Appellant's fifth proposition of error raises an evidentiary issue, allegedly affecting both stages of trial. He asserts that the admission of the video tape of the crime scene deprived him of a fair and impartial trial and prevented the jury from making a reasoned moral decision as to whether to impose the death penalty. Appellant contends that the videotape was overly prejudicial. He also contends that the tape was cumulative, and consisted more of "stage setting" for the prosecution's case rather than an accurate depiction of the crime scene.

In evaluating the admissibility of a videotape, this Court uses the same balancing factors used for the admissibility of photographs. *Chaney v. State*, 612 P.2d 269, 276 (Okl.Cr.1980). The admission of photographs is a matter within the trial court's discretion. Absent an abuse of discretion, this Court will not reverse the trial court's ruling. *Williamson v. State*, 812 P.2d 384, 400 (Okl.Cr.1991), *cert. denied*, 503 U.S. 973, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992); *Nuckols v. State*, 690 P.2d 463, 470 (Okl.Cr. 1984), *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).

To be admissible, the contents of the videotape must be relevant and its probative value must substantially outweigh its prejudicial effect. *Smith v. State*, 737 P.2d 1206, 1210 (Okl.Cr.1987), *cert. denied*, 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987). The probative value of photographs of murder victims and crime scenes can be manifested in numerous ways, including showing the nature, extent, and location of wounds, depicting the crime scene, and corroborating the medical examiner's testimony. *Williamson*, 812 P.2d at 400.

We find that the videotape is neither prejudicial nor cumulative. While the videotape is graphic, it is not so gruesome as to be considered prejudicial. The victim is in the background and his head is turned away so the major injuries inflicted upon the victim are not being constantly shown to the jury. The videotape does have probative value since no pictures were admitted that showed the deceased's head or shoulders, where the majority of the injuries were sustained. The videotape also corroborates the medical examiner's testimony and refutes Appellant's theory that the crime was committed without malice.

Appellant's argument that the videotape is not relevant since the cause of death was not contested has been rejected in *Williamson*, 812 P.2d at 400. Additionally, we reject Appellant's contention that the tape is "stage setting" and depicts the prosecution's theory of the case. This proposition has no merit.

In Appellant's sixth proposition of error, he asserts that his rights to a fair trial

and to a penalty uninfluenced by any arbitrary factor were violated by the trial court's improper comment discrediting his defense before the jury. During bench arguments on the admissibility of rebuttal evidence, the trial judge made the following statements:

> THE COURT: For what it's worth, individually and not judicially, it's the Court's opinion that the post-traumatic stress syndrome is a copout that has been used by people—

At this point, defense counsel Kurt Geer interrupted the judge, voicing his concerns that the jury might be able to hear his comments. The judge continued:

> THE COURT: That's not a proper psychological problem that people have, that they have merely established this to cover up crimes that has (sic) been committed by the Vietnam Veterans. Now, that is just for—

Defense counsel, Mr. Ruffin, then voiced concern that the jury might be able to hear the judge's comments. The judge asked Mr. Miller, who was standing near Mr. Ruffin if he could hear. Mr. Miller indicated that he could hear, but barely, and that the jury was too far away to hear.

In this case, there is nothing in the record to reflect that the jury did, in fact, hear the judge's words. Defense counsel did not ask for a mistrial or ask that the jury be polled. As such, it can be implied that defense counsel waived his objection. In light of the overwhelming evidence against Appellant and the fact that there is no indication that any juror heard the judge's words, the prejudicial comments of the judge did not influence the jury's verdict. As such, this proposition is without merit.

Appellant's eighth assignment of error raises three areas of concern. First, the trial court failed to give OUJI–CR 730 (Defense of Insanity–Burden of Proof). Appellant points out that the burden-of-proof instruction given by the trial court did not contain the critical statement of the jury's duty to acquit upon a finding of insanity. We have reviewed the instructions given in this case and find that as a whole, they do adequately advise the jury of their duty to acquit Appellant upon a finding of insanity.

■ Appellant's second area of concern relates to the trial court's giving of OUJI–CR Nos. 728 and 729, regarding defendant's defense of insanity. He contends that OUJI–CR 729 incorrectly states the applicable law upon which the jury was required to base its determination of a defendant's sanity or insanity at the time of trial. Appellant relies on *Johnson v. State*, 841 P.2d 595 (Okl.Cr. 1992) where we held that the use of the conjunctive word "and" rather than the disjunctive word "or" required the jury to find the defendant insane under both prongs of the *M'Naghten* test rather than just one before they could find insanity. This Court held in *Jones v. State*, 648 P.2d 1251, 1254 (Okl.Cr.1982) that a defendant was legally insane,

> [I]f during the commission of the crime he was suffering from a mental disease or defect rendering him unable to differentiate between right and wrong, or unable to understand the nature and consequences of his acts.

We believe OUJI–729 does state that a defendant may be found to be insane if he cannot distinguish between right and wrong. It also states that a defendant may be found insane if he cannot understand the nature and consequences of his acts. The fact that the framers of this instruction chose to put the second-prong of the test in a separate sentence instead of putting an "or" between the two sentences does not make the instruction more confusing or put more of a burden on a defendant.

■ In his third concern about the insanity instructions, Appellant contends that the trial court failed to inform the jury on what to do should they find him not guilty by reason of insanity, i.e., the trial court failed to give OUJI–CR 731. Instruction No. 18 instructed the jury that "no person could be convicted of a crime if that person was insane at the time of the commission of the act or omissions that constitute the crime." This instruction accurately states the law concerning conviction if a defendant is found to be legally insane. Additionally, as Appellant points out, language similar to OUJI–CR 731 was set forth in the appropriate verdict form

which was furnished to the jury. This proposition is without merit.

In his ninth proposition of error, Appellant contends the flight instruction was improperly given because 1) it allowed the jury to consider the flight evidence as a factor and presume guilt without finding the elements of the crime beyond a reasonable doubt; and 2) there was insufficient evidence to support giving the instruction. These concerns were recently addressed in our decision in *Mitchell v. State*, 876 P.2d 682 (Okl. Cr.1993), *corrected in* 887 P.2d 335 (Okl.Cr. 1994). Based on said decision, the giving of a flight instruction was proper in this case because Appellant's statement concerning his departure was made in a voluntary statement which was revealed at trial. Thus, this proposition is without merit.

In his eleventh proposition of error, Appellant contends that there was no direct evidence to support the jury's finding of malice aforethought, and that the circumstantial evidence did not support malice aforethought murder. The test for sufficiency of evidence where all of the evidence is circumstantial is whether the State's evidence tends to exclude every reasonable hypothesis other than guilt. However, the circumstantial evidence need not exclude every possibility other than guilt. *Berry v. State*, 834 P.2d 1002 (Okl.Cr.1992). When implementing this standard, the evidence and its inferences must be considered in a light most favorable to the State, and the determination will be based on whether the rational trier of fact could have found guilt. *Rudd v. State*, 649 P.2d 791, 794 (Okl.Cr.1982). Based on the facts in this case, there was sufficient evidence presented such that the jury could have found that Appellant killed the victim with malice aforethought. We find no merit in this proposition.

## IV. ISSUES RELATING TO PROSECUTORIAL MISCONDUCT

Appellant raises instances of alleged prosecutorial misconduct during both stages of trial in three separate assignments of error, numbers seven, ten and twelve. In his seventh assignment, he contends there were nine different instances of prosecutorial misconduct that, when combined, caused the jury to be unduly prejudiced towards him and affected the verdict and sentence imposed. These will be addressed individually.

Two allegations of misconduct allegedly occurred during voir dire. First, defense counsel, Mr. Geer, asked prospective juror McCutchen, "[d]o you think it's possible that there are other reasons the defendant might not want to take the stand?" Mr. Geer then asked to approach the bench and complained that when the question was asked, he heard Mr. Macy say, "like two prior convictions." Mr. Macy admitted making these comments, but said they were in a low voice to co-prosecutor, Mr. Miller, and no one else heard it. Mr. Geer stated for the record that he felt the jury was tainted and moved to have it dismissed. The judge overruled him.

The second time, co-defense counsel, Mr. Ruffin, asked prospective juror Smiley, "[a]nd, you think insanity defense is a cop-out?" Mr. Ruffin asked the judge if he could approach the bench. He complained that after the question was asked, Mr. Macy said, "[y]ou bet." Both Mr. Macy and Mr. Miller denied that Mr. Macy had said anything. Mr. Ruffin again stated that the jury was tainted and asked that the comment be stricken. The judge overruled him, stating that he did not hear the comment. At Mr. Ruffin's request, the judge admonished Mr. Macy not to make any more comments that the jury could see or hear. Appellant has shown no prejudice.

The remaining allegations of prosecutorial misconduct took place during closing arguments in both stages of trial. Five of the allegations took place during the closing arguments of the first stage of trial. One such comment was the prosecutor's characterization of the defense expert, Dr. Williams, as "a clinician, essentially a counselor. He is not trained as a scholar or a statistician, apparently he's not a very good test interpreter." Defense objected stating that the impugning of the defense witness was based on Mr. Miller's own opinion, and nothing in the record. The court overruled the objection, and allowed Appellant a con-

tinuing objection to the remainder of the closing argument. Mr. Miller then continued with his closing argument, saying, "[i]s that a thorough evaluation? Is that an impartial evaluation? Is that an evaluation by someone for someone because they're getting paid?" A prosecutor may comment on the veracity of the defense's expert witnesses and their testimony. *See Robertson v. State*, 521 P.2d 1401, 1402 (Okl.Cr.1974). The above comments were not error.

The remaining allegations of prosecutorial misconduct in the first stage of trial occurred in the last few sentences of Mr. Macy's closing argument where he said, "[r]obberies are committed everyday for a lot less than a car, robberies in which killings are involved." Again, this is a proper comment on the evidence. It was in response to Appellant's argument that he lacked the motive to commit the murder because he would not have done it just to steal a car.

The final allegedly improper argument during the first stage of trial was the last sentence in Mr. Macy's closing argument where he said, "[t]he evidence says he's guilty. Don't you be a party to letting a cold-blooded killer loose." Defense counsel objected. While we find this remark to be improper argument and one that is not condoned by this Court, in light of the overwhelming evidence against Appellant and the fact that this was an isolated comment, we do not find it to be prejudicial.

The alleged prosecutorial misconduct pointed out during the second stage of trial is that Mr. Macy should not have mentioned that John Howard had rights too, and that John Howard had a right to live. These comments have been expressly condemned by this Court as being overly prejudicial to a defendant. *Jones v. State*, 738 P.2d 525 (Okl. Cr.1987). However, in light of the overwhelming evidence against Appellant and the fact that it was an isolated comment, we do not find it to be prejudicial.

Another contention is that the prosecution improperly aligned themselves with the "State" to bolster their argument. After reviewing the comments in question, we find them to be harmless error. *See Stover v. State*, 674 P.2d 566 (Okl.Cr.1984).

The final two remarks occurred during the prosecution's final closing argument during the second stage of trial. Neither of these arguments were objected to. In the first comment, Mr. Macy asked,

"Ladies and gentlemen, is he a threat to society? Don't you bet your lives on it." In the second comment, Mr. Macy argued, "Ladies and Gentlemen, is it justice to send this man down to prison, let him have clean sheets to sleep on every night, three good meals a day, visits by his friends and family, while John Howard lies cold in his grave? Is that justice? Is that your concept of justice? How do Jayme and Tom and John's son go visit him?"

These kinds of comments cannot be condoned. There is no reason for them and counsel knows better and does not need to go so far in the future. However, we cannot find that the comments affected the verdict.

Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was such to deprive the defendant of a fair trial. *Langdell v. State*, 657 P.2d 162 (Okl.Cr.1982). We do not believe Appellant was so deprived. This assignment is without merit.

In his tenth proposition of error, Appellant assigns as reversible error the prosecutor's statement advising the jury, "[y]ou do not have to consider those offenses until you decide that he did not commit the crime of murder in the first degree, ..." In its instructions to the jury, the trial court included instructions on the lesser included offenses of Murder in the Second Degree and Manslaughter in the First Degree. Appellant argues that the aforesaid statement, in effect, withdrew those instructions on the lesser included offenses from the jury's consideration.

Both the State and the defense are given wide latitude in closing arguments. They have a right to freely discuss the evidence from their respective viewpoints and draw inferences and deductions arising from the evidence. "Only when argument by the prosecutor is grossly improper and unwar-

ranted, and affects the accused's rights, will a reversal be based upon improper argument." *McCaulley v. State*, 750 P.2d 1124, 1128 (Okl. Cr.1988):

The prosecution was properly exercising its right to comment on the evidence and to draw inferences from it, by pointing out how the evidence did not support the lesser-included instructions, but did support first-degree murder. The jury was given a full set of proper instructions by the judge. The State's argument did not nullify the court's instructions on lesser-included offenses. This proposition is without merit.

■ Appellant's last allegation of prosecutorial misconduct is presented in proposition twelve, where he alleges that the prosecution improperly led the jury to believe that a sentence of death, although given, would not be fulfilled. Thus, argues Appellant, his death sentence is unreliable and warrants relief.

During voir dire, some jury members expressed concern about the failure of the death penalty to deter crime and the failure of the penal system to swiftly and strictly impose the death penalty. Appellant contends that this indicated that members of the jury panel do not equate a death sentence with death. Appellant further contends that Mr. Macy encouraged this belief during his closing argument telling jurors, "[d]efendant's attorney asked you not to kill his client and you can't. All you can do is bring in a verdict of death. Unfortunately, only the twelve of you can do that. No one else can do it for you." Appellant argues that the jury was thus removed from its sense of responsibility for the death sentence, thereby rendering the death verdict unreliable.

■ It is true that a death sentence will be determined to be unreliable and unconstitutional where the jury is led to believe that the responsibility of imposing the death sentence lies elsewhere. *Caldwell v. Mississippi*, 472 U.S. 320, 328–29, 105 S.Ct. 2633, 2639,

86 L.Ed.2d 231 (1985). However, the record does not reflect that the jurors were led to believe they had no responsibility. We have reviewed the above comments in context with the entire closing argument and find that, contrary to Appellant's contentions, Mr. Macy actually took pains to ensure that the jury knew that their responsibility was great. This proposition is without merit.

## V. PUNISHMENT

■ In his thirteenth proposition of error, Appellant asserts that the trial court wrongly denied him his due process right to personally address his sentencing jury. Prior to the sentencing phase of trial, defense counsel moved to allow Appellant to make an "allocution" statement to the jury. Defense counsel indicated that his client would be limiting his statement to a plea of mercy, that is, to saying he was sorry and pleading for his life. The judge overruled the motion based on testimony that Appellant persistently denied during interrogation that he committed the crime.

Allocution has been defined as the formality of the court's inquiry of a defendant as to whether he has any legal cause to show why judgment should not be pronounced against him on verdict of conviction; or, whether he would like to make a statement on his behalf and present any information in mitigation of his sentence.[1] *Black's Law Dictionary*, 76 (6th ed. 1990). Thus, "allocution" takes place after the determination of sentence. Appellant claims that the same rationale for allowing allocution before a sentencing judge should apply to a capital sentencing jury, especially where a defendant does not otherwise testify at a capital trial.

Our search and review of other state statutes and case law reveal a split on whether a defendant in a capital case should have the right to make a statement to the jury without being subject to cross-examination. Some states have specifically given the defendant this right through statute or a rule of crimi-

---

1. Oklahoma has a similar statute, 22 O.S.1981, § 970, which states:

When the defendant appears for judgment, he must be informed by the court, or by the clerk under its direction, of the nature of the indict-

ment or information, and his plea and the verdict, if any thereon, and must be asked whether he has any legal cause to show why judgment should not be pronounced against him.

nal procedure.[2] Some states have concluded that allocution is a right protected by their state constitutions.[3] Others have found that the common-law right allows a capital defendant to address his or her sentencers.[4] Other state courts, however, have concluded that there is no common-law or constitutional right of allocution allowing a capital defendant to address the jury.[5] *State v. Stephenson*, 878 S.W.2d 530, 550 (Tenn.1994).

 This is a case of first impression in Oklahoma[6]. First, we note that the right to allocution is not in itself a constitutional right. *See McGautha v. California*, 402 U.S. 183, 220, 91 S.Ct. 1454, 1474, 28 L.Ed.2d 711 (1971), *vacated on other grounds*, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972). However, Appellant claims that the following authorities give him a statutory and constitutional right to address the jury during the sentencing stage:

1. Title 22 O.S.1981, § 13(2): "To be allowed counsel, as in civil actions, to appear and defend in person *and* with counsel;" (emphasis added).

2. Article II, § 20 Oklahoma Constitution: "... [t]he defendant shall have the right to be heard by himself *and* counsel;" (emphasis added).

3. Title 21 O.S.1981, § 701.10: "... [t]he state and the defendant *or* his counsel shall be permitted to present argument for or against sentence of death." (emphasis added).

This Court addressed the construction of 22 O.S.1981, § 13(2) and Article II, § 20 in *Fowler v. State*, 512 P.2d 238, 246 (Okl.Cr. 1973), *overruled on other grounds in Brookins v. State*, 602 P.2d 215, 217 (Okl.Cr.1979). We adopted the construction of the Supreme Court of California in *People v. Mims*, 160 Cal.App.2d 589, 325 P.2d 234 (1958) where it was held that the fact that a defendant may defend "in person and with counsel" does not mean that a defendant may proceed with counsel and also elect to ask questions and otherwise handle his own trial. We now hold additionally that 22 O.S.1981, § 13(2) and Article II, § 20 do not give a defendant a statutory or constitutional right to make a plea for mercy, or otherwise address his sentencing jury, where he has elected counsel to make closing argument; you cannot have both. If a defendant elects to have his attorney speak, he cannot have *also* a second closing argument.

 Section 701.10 does grant a defendant the right to personally "argue" the issue

**2.** *See* Fed.R.Crim.P. 32(a)(1)(C); Ark.Code Ann., § 16–90–106(b); Cal.Penal Code § 1200; Colo. R.Crim.P. 32(b); Mo.Rev.Stat. § 546.570; N.Y.Crim.Proc.Law § 380.50; P.R.Laws Ann., Title 34, & 168; Tex.Crim.Proc.Code Ann., § 42.07; Wis.Stat. § 972.14(2). *See also People v. Borrego*, 774 P.2d 854, 856 (Colo.1989) (under rule); *State v. Lord*, 117 Wash.2d 829, 822 P.2d 177, 216–17 (1991), *cert. denied*, 506 U.S. 856, 113 S.Ct. 164, 121 L.Ed.2d 112 (1992) (allocution in capital case, under rule).

**3.** *DeAngelo v. Schiedler*, 306 Or. 91, 757 P.2d 1355, 1356–60 (1988) (judge sentencing in capital case); *State v. Nicoletti*, 471 A.2d 613 (R.I. 1984) (noncapital case); *Harvey v. State*, 835 P.2d 1074, 1081–82 (Wyo.1992), *cert. denied*, 506 U.S. 1022, 113 S.Ct. 661, 121 L.Ed.2d 586 (1992) (noncapital).

**4.** *See Harris v. State*, 306 Md. 344, 509 A.2d 120, 123–127 (1986); *Homick v. State*, 108 Nev. 127, 825 P.2d 600, 603–05 (1992); *State v. Zola*, 112 N.J. 384, 548 A.2d 1022, 1044–46 (1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1146, 103 L.Ed.2d 205 (1989); *Williams v. State*, 445 So.2d 798, 813–14 (Miss.1984), *cert. denied*, 469 U.S. 1117, 105 S.Ct. 803, 83 L.Ed.2d 795 (1985) (mentions that defendant allowed to make un-

sworn statement to jury, no discussion regarding source of right); *State v. Mak*, 105 Wash.2d 692, 718 P.2d 407, 430 (1986), *cert. denied*, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986).

**5.** *See People v. Nicolaus*, 54 Cal.3d 551, 286 Cal.Rptr. 628, 817 P.2d 893, 910 (1991), *cert. denied*, 505 U.S. 1224, 112 S.Ct. 3040, 120 L.Ed.2d 908 (1992); *People v. Kokoraleis*, 132 Ill.2d 235, 138 Ill.Dec. 233, 254–55, 547 N.E.2d 202, 223–24 (1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990); *State v. Whitfield*, 837 S.W.2d 503, 514 (Mo.1992) (en banc); *Commonwealth v. Abu-Jamal*, 521 Pa. 188, 555 A.2d 846, 857–58 (1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990); *Bassett v. Commonwealth*, 222 Va. 844, 284 S.E.2d 844, 853 (1981), *cert. denied*, 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982).

**6.** In *Mitchell v. State*, 884 P.2d 1186, 1205 n. 68 (Okl.Cr.1994), this Court, citing *Freeman v. State*, 876 P.2d 283, 289–290 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994), noted,: "[w]e neither address nor decide the issue of a defendant's request to speak to the jury before sentencing under 21 O.S.1991, § 701.10(D)."

of the death penalty to the jury. *See Bowen v. State*, 715 P.2d 1093, 1103 (Okl.Cr.1984), *cert. denied*, 473 U.S. 911, 105 S.Ct. 3537, 87 L.Ed.2d 660 (1985). However, the statute provides that the defendant or his counsel shall be permitted to so argue, not both. Additionally, Section 701.10 uses the term "argument," which encompasses more than a plea of mercy, i.e., saying he is sorry and pleading for his life. Argument entails summation of the material in the record of the case and inferences therefrom against the death penalty.

■ In this case, Appellant did not request to make closing argument but merely to make a plea of mercy in addition to closing argument by his counsel. We do not construe Section 701.10 to encompass both. Thus, we conclude that there is no statutory, common-law or constitutional right [7] of a defendant to make a plea for mercy or otherwise address his sentencing jury, in addition to closing argument by counsel. The trial court properly denied Appellant's request.

■ In his fourteenth assignment of error, Appellant asserts that in one of its instructions to the jury, the trial court erroneously allowed the jury to consider sympathy for the victim, thereby rendering his sentence of death unreliable and unfair. The instruction complained of is as follows:

... [y]ou may, in your discretion, consider sympathy as a factor in your deliberations and then determine whether or not you should give any weight to such factor under all the evidence you have heard in both the first and second stages.

This Court recently addressed this issue in *Freeman v. State*, 876 P.2d 283 (Okl.Cr.1994), *cert. denied*, ⎯ U.S. ⎯, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994), where the trial court gave the exact same instruction. *Freeman* held that the instruction fairly and accurately stated the law. This proposition is without merit.

In his fifteenth proposition of error, Appellant claims that the trial court should have instructed the jury on the presumption of life. He contends that the jury should have been instructed that they should return a sentence of life without parole instead of death, unless the prosecution demonstrated beyond a reasonable doubt that death was the only appropriate penalty. This argument was presented and rejected in *Fox v. State*, 779 P.2d 562, 574 (Okl.Cr.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). We find no error in the trial court's failure to give Appellant's requested instruction.

In his sixteenth assignment of error, Appellant claims that the instructions regarding the weighing of aggravating circumstances against mitigating circumstances was contrary to the dictates of 21 O.S.Supp.1987, § 701.11. Specifically, he claims that OUJI–CR 440 instructs the jury to weigh the totality of aggravating circumstances against each individual mitigating factor, thereby diminishing the State's burden contrary to Section 701.11. We do not agree.

This Court has repeatedly held that it refuses to establish specific standards for the balancing of the aggravating and mitigating circumstances. *Williamson v. State*, 812 P.2d 384, 410 (Okl.Cr.1991), *cert. denied*, 503 U.S. 973, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992); *Fox*, 779 P.2d at 573. The instruction adequately informs the jury that they are required to find that the aggravating circumstances outweigh the mitigating cir-

---

7. We are mindful of Appellant's request to adopt the position of the Supreme Court of New Jersey, where in *State v. Zola*, 112 N.J. 384, 548 A.2d 1022 (1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1146, 103 L.Ed.2d 205 (1989), quoting *McGautha v. California*, 402 U.S. 183, 220, 91 S.Ct. 1454, 1474, 28 L.Ed.2d 711, 733 (1971), *vacated on other grounds*, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972), the court reasoned:

Whatever the Constitution permits, it bespeaks our common humanity that a defendant not be sentenced to death by a jury which never heard the sound of his voice.

*Zola*, 548 A.2d at 1045.

We have also considered *Tennessee v. Cazes*, 875 S.W.2d 253 (Tenn.1994), *cert. denied*, ⎯ U.S. ⎯, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995), where that court approved a new rule allowing capital defendants to give narrowly confined testimony to the jury at the sentencing phase without being subject to cross-examination. However, we deem it appropriate that our Legislature act in this regard.

cumstances in order for them to recommend a penalty of death. This proposition is without merit.

■ In his seventeenth assignment of error, Appellant argues that the trial court erred in giving the following instruction regarding mitigating evidence:

Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case.

He argues that instructing the jury in the permissive language that mitigating circumstances are those which "may be considered" as extenuating or reducing blame, instead of using the mandatory language of "must be considered" allowed the jury to disregard mitigating evidence. This argument has been previously rejected by this Court.

In *Pickens v. State,* 850 P.2d 328, 339 (Okl.Cr.1993), *cert. denied,* — U.S. —, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994), we held that "it would have been a misstatement of law to instruct the jury that it 'must' consider the mitigating evidence presented to reduce the blame as that would take away from the jury its duty to make an individualized determination of the appropriate punishment." Indeed, a review of the instructions given shows the jury was adequately instructed on mitigating circumstances. They were not told to disregard the mitigating circumstances. In fact, Instruction No. 9 listed fourteen specific items which the jury could consider as evidence to mitigate Appellant's punishment. They were instructed that whether the circumstances existed and whether they were mitigating evidence was their decision. Additionally, they were instructed that in order to sentence Appellant to death, they must unanimously find the existence of one or more aggravating circumstances, and that any such aggravating circumstance or circumstances outweighs the mitigating circumstances. Thus, the instructions, as given, do not direct the jury to disregard any mitigating evidence. This proposition is without merit.

In his eighteenth proposition of error, Appellant points out that the instructions on mitigation did not instruct the jury that unanimous agreement upon the mitigating circumstances was not required before the jury could consider them. Appellant contends that without this instruction, his sentence of death was imposed in violation of *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990).

Appellant argues that because "the few instructions on mitigation were wedged between instructions regarding aggravating circumstances, and those instructions made numerous and repeated references to the need for unanimity," a reasonable juror could have concluded that unanimity was required also for mitigating circumstances. This Court has previously rejected this argument in *Stiles v. State,* 829 P.2d 984, 997 (Okl.Cr. 1992). We find no error.

■ Appellant next asks this Court to vacate his death sentence because the trial court erred when it refused to instruct the jury they had to find the aggravating factors outweighed the mitigating factors "beyond a reasonable doubt." Specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). *See also Walker v. State,* 723 P.2d 273, 284 (Okl.Cr.1986), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986). This same argument was presented and rejected in *Romano v. State,* 847 P.2d 368, 392 (Okl.Cr.1993), *affirmed,* 512 U.S. —, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). Citing *Johnson v. State,* 731 P.2d 993 (Okl.Cr.1987), *cert. denied,* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987), this Court held that the burden of proof analysis is not strictly applicable to the weighing process. *Romano,* 847 P.2d at 392. This proposition is without merit.

In his twentieth assignment of error, Appellant asserts the trial court erred by not instructing the jury that they had the right to return a sentence less than death despite a finding that the aggravating factors out-

weighed the mitigating factors. This argument too has been previously rejected by this Court. *See Williamson,* 812 P.2d at 410; *Fox,* 779 P.2d at 573. This proposition is without merit.

■ Next, during the sentencing phase, defense counsel entered a stipulation that Appellant had been convicted of a prior violent felony. The stipulation was on a piece of yellow legal paper, in defense counsel's handwriting, but signed by Appellant. Appellant claims that this action by trial counsel constituted ineffective assistance of counsel. He further contends that the trial court did not follow the correct procedure to ascertain that he was knowingly entering the stipulation and that he understood the nature and consequences of his acts.

In *Brewer v. State,* 650 P.2d 54, 63 (Okl.Cr. 1982), *cert. denied,* 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1983), we held that a defendant must personally stipulate that the prior felony conviction(s) alleged by the State did involve the use or threat of violence to the person. Counsel for the defendant must not be allowed to so stipulate for him. The judge must satisfy himself that the defendant understands and appreciates the nature of the proposed stipulation and the consequences potentially arising from either an agreement or a refusal to stipulate before he may accept the defendant's decision.

Here, Appellant's stipulation to the "prior violent felony" aggravator was harmless at best. He fails to show how he was prejudiced by his agreeing to counsel's decision to stipulate to the prior felony conviction. The evidence surrounding this prior felony conviction would have been introduced to prove the "continuing threat aggravator" regardless of whether Appellant had stipulated to it or not. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We find no harm.

■ Appellant's twenty-second and twenty-third allegations of error concern the aggravator, "especially heinous, atrocious or cruel." First, he claims that the evidence was insufficient to support the jury's finding of said aggravator. A review of the evidence reveals that the victim was alive when the blows were inflicted, and that while none of the blows were fatal by themselves, the blows combined with the lungs filling with fluid caused the death. Further evidence shows that the victim was conscious when many of the blows were inflicted. There were blood splatters covering a large area of the apartment. Many were higher up on the walls, indicating that the victim was conscious and moving when these blows were inflicted. The victim suffered over 19 blows to his body. His skull had multiple blows and his left eye was punctured. This evidence is sufficient to show that the victim suffered serious physical abuse prior to death. The jury was instructed in accordance with OUJI–CR 436. Applying the two-step analysis as set forth in *Nuckols v. State,* 805 P.2d 672, 674 (Okl.Cr.1991), *cert. denied,* 500 U.S. 960, 111 S.Ct. 2276, 114 L.Ed.2d 727 (1991), we find that this aggravator is more than supported by the evidence. This proposition must fail.

Second, Appellant claims that OUJI–CR 436 is unconstitutionally vague in that it is does not adequately channel the jury's discretion. We do not agree. This instruction has been held to be constitutionally valid and clear. *See Romano,* 847 P.2d at 386; *Boltz v. State,* 806 P.2d 1117, 1125 (Okl.Cr.1991), *cert. denied,* 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991); *Moore v. State,* 788 P.2d 387, 401–02 (Okl.Cr.1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 182 (1990); *Fox,* 779 P.2d at 576; *Fowler v. State,* 779 P.2d 580 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990). The second paragraph sufficiently narrows application of this aggravating circumstance to those instances where death of the victim was preceded by torture of the victim or serious physical abuse. As such, this instruction was applied in a constitutional manner. This proposition is meritless.

■ In his twenty-fourth assignment of error, Appellant contends that the evidence was insufficient to prove that he killed the decedent for the purpose of avoiding or preventing lawful arrest or prosecution. The existence of this aggravating circumstance is determined by looking at the killer's intent.

*Williamson*, 812 P.2d at 407; *Fox*, 779 P.2d at 576; *Fowler*, 779 P.2d at 588; *Stouffer v. State*, 738 P.2d 1349, 1361–1362 (Okl.Cr. 1987), *cert. denied*, 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988); *Moore v. State*, 736 P.2d 161, 165 (Okl.Cr.1987), *cert. denied*, 484 U.S. 873, 108 S.Ct. 212, 98 L.Ed.2d 163 (1987). "In the absence of his own statements of intent, such evidence may be inferred from circumstantial evidence." *Romano*, 847 P.2d at 387.

Evidence presented by the State showed that Appellant knew John Howard. After beating him he took the victim's car and switched the license plate with another car in the parking lot. He then drove to the store where Howard worked and using the stolen keys to obtain entry, stole the money bags from underneath the cash register. This is sufficient evidence from which a rational juror could have found beyond a reasonable doubt the existence of this aggravating circumstance.

In addition, during interrogation Appellant stated that he didn't kill John Howard and that Howard was on his feet and breathing. He then mumbled, "I was afraid he was going to call the cops on me." This statement shows that Appellant knew that he would be in trouble if John Howard called the cops on him for beating him. It can be inferred from this statement that Appellant killed John Howard in order to avoid being arrested or prosecuted. This proposition must fail.

■ In his twenty-fifth assignment of error, Appellant asserts that the application of the "while serving a term of imprisonment" aggravator in his case was improper. He argues that this aggravator is limited to killings within a prison or correctional institution. Appellant was an escapee at the time he committed the offense. As such, he contends that this aggravating circumstance is invalid because technically, he was not "serving a sentence of imprisonment" at the time he killed John Howard.

This is a case of first impression in Oklahoma. While we have applied this aggravator to those killings occurring within Oklahoma prison facilities [8] and to those killings committed while on the Pre-parole Conditional Supervision Program,[9] we have not determined its application to escapees. Many state legislatures have specifically addressed this problem by the careful wording in their statutes, i.e., "who has escaped from lawful custody or confinement," "after having escaped," or "while escaping, attempting to escape or had escaped." Some states have included escapees by using such wording as, "has been sentenced to a felony," or "under a sentence of imprisonment." (Delaware [10], Georgia [11], Kentucky [12], Massachusetts [13], Alabama [14], Arizona [15],

---

**8.** *See VanWoundenberg v. State*, 720 P.2d 328, 338 (Okl.Cr.1986), *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *James v. State*, 736 P.2d 541, 546 (Okl.Cr.1987), *cert. denied*, 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987); *Green v. State*, 713 P.2d 1032, 1040 (Okl.Cr. 1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986), *overruled on separate grounds* in *Brewer v. State*, 718 P.2d 354, 366 (Okl.Cr.1986).

**9.** *See McCracken v. State*, 887 P.2d 323, 331 (Okl.Cr.1994), *cert. denied* — U.S. ——, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995).

**10.** Title 11, Section 4209: Aggravating circumstance includes person who has committed offense after having escaped from confinement or law enforcement and has not yet been re-captured.

**11.** Georgia Statute 17–10–30(b)(9): The offense of murder was committed by a person in, or who has escaped from the lawful custody of a peace officer or place of lawful confinement.

**12.** Kentucky Statute, KRS 532.025(2)(a)5: The offense of murder was committed by a person who was a prisoner and the victim was a prison employee engaged at the time of the act in the performance of his duties.

**13.** Massachusetts—(M.G.L.A. Ch. 279, § 69(2): The murder was committed by a defendant who was at the time incarcerated in a jail, house of correction, prison, state prison or a correctional or penal institution or a facility used for the housing or treatment or housing and treatment of prisoners.

**14.** Alabama—Ala.Code § 13A–5–49(1): The capital offense was committed by a person under sentence of imprisonment.

**15.** Arizona—A.R.S.A. § 13–703: The defendant committed the offense while in the custody of the

Colorado [16], Florida [17]).

Title 21, O.S.1981, § 701.12(6) uses the phrase, "while serving a sentence of imprisonment...." We have found no other state that uses this wording. Appellant contends that the words "while serving" mean that the defendant was actually in confinement "serving" his sentence at the time he committed the offense in question. Further, he contends that to extend this aggravator would render it vague and overbroad, thereby making it unconstitutional. He argues that criminal statutes must provide sufficient notice that a reasonable person would know that his or her conduct is subject to criminal liability. *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).

In support of his argument, Appellant points out that from the time an escapee escapes, time towards his sentence is tolled, and thus, he is not "serving" his sentence. We find this argument to be unpersuasive. To make such a finding would exempt from the application of this aggravator prisoners who have been fortuitous enough to escape. The Legislature did not intend to benefit one who is an escapee. Logic tells us you cannot benefit from your acts and avoid the aggravator. Therefore, this proposition is without merit.

Appellant's propositions of error numbers 26, 27, 28 and 29 concern the "continuing threat" aggravator. Appellant contends that Oklahoma's "Continuing Threat" aggravator is vague and overbroad because it is not sufficiently defined for the jury and narrowed within constitutionally permissible limits. He also contends that the addition of life without parole in the sentencing option warrants reconsideration by this Court of its prior case law concerning the application of this aggravating circumstance. This proposition is without merit.

This court has consistently upheld the "continuing threat" aggravator as being specific, not vague, and readily understandable.

*Romano v. State*, 847 P.2d at 389; *Boltz*, 806 P.2d at 1125; *Munson v. State*, 758 P.2d 324, 335 (Okl.Cr.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989); *Liles v. State*, 702 P.2d 1025, 1031 (Okl.Cr.1985), *cert. denied*, 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986); *VanWoundenberg v. State*, 720 P.2d 328, 335 (Okl.Cr.1986), *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986).

The addition of life without parole as a sentencing option does not create the need to review prior case law concerning the application of this aggravating circumstance. A finding of an aggravating circumstance does not require the jury to sentence the defendant to death, it merely authorizes the jury to do so. With the life without parole option, the jury now has broader discretion not to sentence a defendant to death.

Next, Appellant contends that use of uncorroborated testimony to establish that he was a continuing threat to society and failing to give requested accomplice corroboration instructions were fundamental and reversible error. David Britten testified that he was involved in two crimes with Appellant. Thus, it was error not to give the instructions regarding accomplice corroboration, unless other evidence showed corroboration or continuing threat. Here, corroboration was shown by the testimony of Appellant, as well as other evidence. This proposition is without merit.

In his thirtieth assignment of error, Appellant challenges this Court's authority to reevaluate the death sentence and reweigh aggravating against mitigating circumstances where one of the aggravating factors has been declared unconstitutional. This is without merit since all of the aggravators found are valid.

Appellant argues in proposition thirty-one that other than aggravating circumstances,

state Department of Corrections, a law enforcement agency or county or city jail.

**16.** Colorado—C.R.S. § 16–11–103(6)(a): The crime was committed while the defendant was "under sentence of imprisonment." In *People v. Davis*, 794 P.2d 159, 180–182 (Colo.1990), *cert. denied*, 498 U.S. 1018, 111 S.Ct. 662, 112

L.Ed.2d 656 (1991), the court extended this aggravating circumstance to include those defendants who had been paroled.

**17.** Florida—West's F.S.A. § 921.141(5)(a): The capital felony was committed by a person under sentence of imprisonment or placed on community control.

the Oklahoma statute provides no guidance or restraint for prosecutors in a first-degree murder case. Without these guidelines, the decision to seek the death penalty, depends on the whims of the individual prosecutors, which inevitably leads to arbitrary and capricious actions. This argument was rejected recently in *Romano*, 847 P.2d at 391–92. This proposition is without merit.

In proposition thirty-two, Appellant challenges the constitutionality of Title 21 O.S. 1981, § 701.11, as being in opposition to Article 7, § 15 of the Oklahoma Constitution. Title 21, O.S.1981, § 701.11, provides in part that if a jury returns a verdict of death, "it shall designate in writing ... the statutory aggravating circumstance or circumstances that it unanimously found beyond a reasonable doubt." Article 7, § 15 of the Oklahoma Constitution provides in part that "in all jury trials, the jury shall return a general verdict, and no law in force nor any law hereinafter enacted shall require the Court to direct the jury to make findings of particular questions of fact, but the Court may, in its discretion, direct such special findings." This same argument was raised and rejected in *Romano*, 847 P.2d at 391–92. This assignment of error is of no merit.

## VI. MANDATORY SENTENCE REVIEW

Finally, this Court is charged by the Legislature to determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor and (2) whether the evidence supports the jury's finding of the statutory aggravating circumstances found.

We are satisfied that neither passion, prejudice nor any other arbitrary factor is present in the record to undermine our confidence in the jury's verdict. Ample evidence supports the jury's finding of the five (5) aggravating factors:

1. That Appellant had previously been convicted of a felony involving violence.

2. That Appellant was a continuing threat to society.

3. That the murder of John Howard was especially heinous, atrocious or cruel.

4. That the murders were committed for the purpose of preventing lawful arrest and prosecution.

5. That the murder was committed while Mr. Duckett was serving a sentence of imprisonment.

Finally, upon review of capital cases, we find the sentence of death in this case is supported by the evidence. *See Salazar v. State*, 852 P.2d 729 (Okl.Cr.1993); *Pickens v. State*, 850 P.2d 328 (Okl.Cr.1993), *cert. denied*, 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994); *Fox v. State*, 779 P.2d 562 (Okl.Cr.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). Judgments and Sentences are **AFFIRMED.**

CHAPEL, V.P.J., and LANE and STRUBHAR, JJ., concur in result.

LUMPKIN, J., concurs.

LANE, Judge, concurring in result.

I write to address the use of the demonstrative tape, State Exhibit Number 142. Upon viewing, it is obvious that it was produced to be introduced as evidence in a trial. It depicts the sponsoring witness, Lt. Tom Bevel, narrating and leading the viewer through the crime scene. It shows the witness demonstrating his theories as to how the murder occurred by his acting out the role of the killer. At times Bevel is asked questions by a voice off camera (presumably R. Scott, the camera operator). It also shows graphic closeups of the victim prior to the corpse being removed from the scene with Bevel calling attention to various aspects of the body and the surrounding area.

I find that the introduction of the tape to be error. It was unnecessary and repetitious. Bevel had already testified as to the blood spatters and his theories by use of diagrams and overlays when the tape was introduced. In short, it added nothing to the proceeding that was not already introduced by the same witness. At the same time, the presentation of the blood and gore with a running commentary by the witness contributed nothing to the factual basis of the case. Instead, it called attention to gruesome

scenes. Its prejudicial value outweighed the probative value.

I am not opposed to the use of television recordings as evidence in a trial under the proper circumstances.[1] There are times when they may be the best evidence that can be introduced such as when they are made simultaneously with the event. They are also useful to show demeanor of a person and circumstances under which a confession is made.[2]

However, I do not find the error *in this case* sufficient to cause reversal. Bevel was available for cross examination, and the remaining evidence was sufficient to overcome the admission of the tape. However, in proper circumstances the use of a television tape in this manner may be sufficient to cause reversal. It is not so in this case.

STRUBHAR, Judge, concurring in results.

My vote reflects that I concur in the results reached by the majority; however, I disagree with the analysis of the Appellant's thirteenth proposition of error in which he alleges that he was denied his due process right to personally address his sentencing jury. A non-testifying defendant in a capital case should be allowed to make a brief personal plea for mercy.

---

1. *See Burke v. State,* 820 P.2d 1344, 1348 (Okl.Cr. 1991), *cert. denied,* 504 U.S. 973, 112 S.Ct. 2940, 119 L.Ed.2d 565 (1992) (Lane, J. dissenting).

2. *See Williams v. State,* 226 P.2d 989 (Okl.Cr. 1951).